GEORGE G. PERRY, Appellee, v. J. W. DILLRANCE, and
SEREPTA DILLRANCE, Intervenor,
Appellants.

1. **Homestead:** AGREEMENT TO SELL: ACTION FOR SPECIFIC PERFORM-
ANCE: WIFE AS INTERVENOR. In an action against a husband for the
specific performance of an agreement to sell a homestead, the wife
is entitled to intervene, although her rights may be fully protected by
her husband's answer.

2. ———: ABANDONMENT: EVIDENCE. Where a husband left this state,
and engaged in business in another state, and after a year or two his
wife and family removed thither, with most of their household
effects, where they remained for seven years, a part of the time
keeping house, and the husband registered in such other state as a
qualified elector, and voted at all elections, and the homestead
formerly occupied by them in this state was leased to tenants, and
was offered for sale, *held*, that the evidence showed an abandonment
of the homestead in this state, although the wife, during her foreign
residence, often expressed her intention of returning to her former
home "some time," and told her husband to keep said homestead so
they could have a home whenever they wanted to come to it.

*Appeal from Dubuque District Court.*—HON. D. J.
LENEHAN, Judge.

WEDNESDAY, OCTOBER 19, 1892.

ACTION for specific performance of a contract.
There was a decree for the plaintiff, and the defendant
and intervenor appeal.

The facts in this case, briefly stated, are that the
plaintiff, in August, 1889, entered into a written con-
tract with the defendant, J. W. Dillrance, then the
fee simple owner, for the purchase of certain lots in
the city of Dubuque, he agreeing to pay the defendant
five thousand dollars therefor, in consideration of
which the defendant was to execute to him a good

warranty deed. The plaintiff tendered the purchase money, and demanded a deed, which the defendant refused to execute, because he and his wife claimed the property as a homestead, and she would not join in a conveyance. The intervenor also set up the homestead character of the lots, and her refusal to convey same, claiming that their absence therefrom was only temporary. The plaintiff avers that the homestead was abandoned long prior to the sale. The court decreed specific performance on part of the defendant, on the plaintiff's paying two-thirds of the purchase money, and dismissed the petition of intervention. The defendant and intervenor appeal.—*Affirmed.*

*Powers, Lacy & Brown* and *O'Donnell Bros.,* for appellants.

*Henderson, Hurd, Daniels & Kiesel,* for appellee.

KINNE, J.—I. It is contended that the intervenor is not a necessary party to this suit, and that her petition should, if any event, be dismissed.

1. HOMESTEAD: agreement to sell: action for specific performance: wife as intervenor.

It is said that all of the wife's rights are fully protected by the husband's answer. It was held in *McClure v. Braniff,* 75 Iowa, 43, that, when the right of the wife was actual and existing, she could protect it by intervening in a suit brought against her husband touching the homestead property. We see no reason why she should not be permitted to intervene for the protection of her homestead right, even though her husband may also assert her right in her behalf. Having a direct interest in the matter in litigation, and in the success of the husband therein, her right to intervene is clearly given by the statute. Code, sections 2683–2685.

II. Was the homestead abandoned? There is no question as to its abandonment, so far as the defendant

2. ——: abandonment: evidence.

was concerned. He became a resident and citizen of Omaha, Nebraska. He acquired a domicile there, registered as a qualified elector, and voted at all elections, and in every way evinced his intentions to make that place his permanent abode. But it is claimed that intervenor never abandoned the homestead in Iowa. The facts, as disclosed by the record, we think fairly show that, for many years prior to 1881, the defendant and intervenor, who were husband and wife, occupied the premises in controversy as their homestead. In 1881 the intervenor and family rented three rooms in the house, and boarded with a daughter in another house. In 1882, the defendant, intervenor, and family moved to Omaha, Nebraska, leaving such articles in the house as they did not need in Omaha. The Dubuque house shortly after this time was occupied by a daughter and her family, except the rooms above mentioned. Some changes were made in the interior of the house by the daughter to accommodate the two families. Sometime afterwards the daughter and family also moved to Omaha, and took with them or sold most of the articles which the intervenor had left in the house when she went to Omaha. The Dubuque property was often offered for sale, and a sign to that effect was up when the Dillrances went away, or shortly afterwards. The property was occupied by tenants during the time they resided in Omaha. Mr. Dillrance had been in business in Omaha a year or two before his wife and family moved there.

The testimony shows that the family resided in Omaha from 1882 to 1889, a little over seven years. Mrs. Dillrance, during her residence in Omaha, often expressed her intention to return to Dubuque to her old home "some time." She testifies that she "was satisfied to remain [in Omaha] as long as the folks were doing well, and until we got ready to come

back." That she told her husband to keep the Dubuque homestead; "we could always have a home whenever we wanted to come to it." She said "she was perfectly happy to go anywhere, knowing she could come back to her home; in case anything happened that they should lose, she would have a home." Much of the time they were in Omaha Mr. and Mrs. Dillrance kept house, and a part of the time they boarded,—some of the time with a daughter in a house purchased by Mr. Dillrance and deeded to his wife.

Without going into the evidence in detail, it may be said that, as a whole, it shows that, after the Dillrances had resided in Omaha a year or so, there was nothing in the acts or conduct of Mrs. Dillrance to indicate that she ever expected to return to Dubuque to occupy her old homestead, except her statements, from time to time, that she intended to do so some time. In brief, this is a case where the husband abandoned the Iowa homestead, and moved to another state. His wife went with him. He established a residence there, and became in all respects a citizen of Omaha. Neither of them occupied or used the Dubuque homestead during the seven years they resided in Omaha, except as a storage place for a few articles of furniture, most of which were either moved to Omaha soon after they went there, or sold. After their first year's sojourn in Omaha, no time was ever fixed by Mrs. Dillrance for their removal to Dubuque. It was one of those cases where there was on her part an expressed intention to return, but the time was as uncertain at the end of seven years as it had been at the outset. Where, as in this case, the husband abandons the homestead, becomes a citizen of another state, resides there continuously with his wife and family for over seven years, without a definite time or plan for a return, it shows an abandonment of the Iowa homestead by the wife.

Cases involving the questions of abandonment all differ as to the facts, but the following authorities support our holding: *Wilson v. Daniels*, 79 Iowa, 134; *Leonard v. Ingraham*, 58 Iowa, 406; *Donaldson v. Lamprey*, 29 Minn. 18, 11 N. W. Rep. 119; *Cotton v. Hamil*, 58 Iowa, 594. We need not consider the question as to whether the Dillrances acquired a homestead in Omaha, as to our minds it is clear that there was an abandonment of the Iowa homestead by both the defendant and intervenor.

Since the trial of this case in the district court the defendant J. W. Dillrance has died. Counsel for all the parties have agreed that his executor, widow, and devisees may be substituted as parties defendant, which is ordered done. The judgment of the district court is AFFIRMED.