Martin v. Turnbaugh.

MARTIN et al., Appellants, v. TURNBAUGH et al.

Division One, December 22, 1899.

1. **Ejectment:** CONVERTED INTO ACTION IN EQUITY. In an ejectment suit if defendant's answer and cross bill pleads an equitable defense and seeks affirmative relief which a court of equity alone has power to give, the case should be treated as one in equity.

2. ———: EQUITABLE DEFENSE: REPLY. To plaintiff's ejectment defendant set up an equitable defense and cross action, in which he set up certain deeds of trust of which he was the beneficiary, the execution thereafter of a warranty deed to him by the mortgagor, his release thereupon of the deeds of trust, the subsequent setting aside of the warranty deed by the courts, and the purchase under another judgment against the mortgagor of a part of the land by the plaintiff; that the defendant is and has been in possession ever since the warranty deed was executed to him, that the plaintiff had not offered to pay the debts secured by the deeds of trust, and then asks that the satisfaction of the deeds of trust be set aside. *Held*, that a proper plea to this equitable defense was an extinguishment of the deeds of trust, first, by the fraud of the defendant in accepting the warranty deed and the release of the deeds of trust on the margin of the record, second, by the merger by the qualified title conveyed by the deeds of trust into an absolute title of so much of the lands as the defendant acquired by purchase at the sheriff's sale under the judgment, and, third, by payment of the debt secured by the deeds of trust, all of which plaintiff can set up in his reply, and all of which can be tried in this action, and plaintiffs are not reverted to a separate bill in equity to redeem.

3. ———: DEFENSE TO EQUITABLE CROSS ACTION. In actions at law the court must defer plaintiff's legal action until it hears the defendant's equitable cross action and plaintiff's defense thereto, which may be the same as if the defendant had by separate action brought his suit in equity against the plaintiff. The trial court must hear and determine the whole controversy between the parties concerning the subject-matter.

4. **Deed of Trust:** RELEASE BY WARRANTY DEED: SETTING ASIDE: MERGER. Where defendant was the beneficiary of honest deeds of trust, and on the surrender of the notes to the mortgagor, the

mortgagor gave him a warranty deed to the land, and thereupon the *cestui que trust* entered satisfaction on the margin. of the record, in the belief that the deeds of trust became merged in the warranty deed, and the warranty deed was subsquently set aside for having been made in fraud of creditors, the deeds of trust were not thereby set aside too, but on proper proceeding the satisfaction thereof will be set aside. ·

5. ———: FRAUDULENT RELEASE DEED. Although the warranty deed given by the mortgagor to the *cestui que trust* may be fraudulent, yet the deeds of trust honestly made, will not be held to be fraudulent also simply because the *cestui que trust* participated in the mortgagor's fraud in making the deed of release.

6. ———: SHERIFF'S SALE UNDER EXECUTION: MERGER: EQUITY OF REDEMPTION. One who is the *cestui que trust* in a deed of trust and buys the land at a sheriff's sale under a judgment, thereby unites in himself the lessor qualified title embraced in the deed of trust with the equity of redemption which the sheriff sold and thereby acquires the absolute title, and the deed of trust at once merges into the absolute title, as to so much of the land as was bought by him at the sheriff's sale.

7. ———: ———: ———: AS TO REST OF LAND. But for the purpose of enforcing the payment of that part of the debt left unpaid, the *cestui que trust* is entitled to hold and enforce the deed of trust against that part of the land in which the equity of redemption was not bought by him at the sheriff's sale.

8. ———: ———: ———: ———: REDEMPTION. But if some other person bought the equity of redemption at the sheriff's sale, such person holds it subject to the deed of trust, and has the right to redeem.

9. ———: ———: ———: ———: APPORTIONMENT OF DEBT. The balance of the land not bought at the sheriff's sale under execution by the holder of the deed of trust, but bought by others, is subject to the balance of the debt, the amount of which, if the holder of the equity of redemption wishes to redeem, is to be ascertained and decreed by a court of equity, and consists of such a proportion of the whole debt, as it existed at the time the *cestui que trust* went into possession of a part of the lands, as the value of the rest bears to the total value of the whole tract covered by the deed of trust. Besides the *cestui que trust*, if in possession, should be charged with rents on so much of the land as he seeks to enforce his deed of trust against, and be credited with whatever taxes he has paid, and besides he should be charged with whatever money he received from the original mortgagor, even though he returned it to him.

Appeal from Lincoln Circuit Court.—*Hon. E. M. Hughes,* Judge.

REVERSED AND REMANDED (*with directions*).

*J. D. Hostetter* for appellants.

(1)   After satisfaction entered by a mortgagee or the beneficiary in a deed of trust on margin of record the land becomes thereby discharged from the lien, and the legal title revests in the mortgagor.   Sec. 7096, R. S. 1889; McNair v. Picotle, 33 Mo. 57; Gale v. Mensing, 20 Mo. 461; Jackson v. Cunningham, 28 Mo. App. 354; Blanchard v. Baker, 29 Mo. 441; Dickerson v. Bridges, 48 S. W. 825.   In the light of this principle it is pertinent to inquire, where is the legal title?   If it exists at all, it must be found either in L. M. Wells, Estes, Leighton and Griffith the trustees respectively in the first and second deeds of trust, or in the plaintiffs. It can not be in Wells, because he is dead, and prior to his death, all his interest of whatever character, was transferred by the sheriff's deed at execution sale to the plaintiffs.   It can not be in Estes, because he was the assignee of the beneficiary in the first one, and beneficiary in the second and it is elementary law that the legal title passes in a deed of trust to the trustee and not to the beneficiary.   Pickett v. Jones, 63 Mo. 195; Siemere v. Schrader, 88 Mo. 20; Bailey v. Winn, 101 Mo. 649; Hospes v. Almstedt, 13 Mo. App. 270; Johnson v. Houston, 43 Mo. 227.   Neither is the legal title in Estes by reason of the conveyance by general warranty deed of the entire "Coles lands" to him by Wells on May 18, 1887, for two reasons:   1st, Wells did not then have the legal title to convey, and 2d, said deed has been set aside and annulled, hence no title can accrue from that source.   The legal title is not in Leighton and Griffith, the trustees in the two deeds of trust, for the reason that said deeds of trust have been acknowledged satisfied, and the lands released from the liens

Martin v. Turnbaugh.

thereof, and the notes secured thereby canceled, and marked paid on production to the recorder of deeds, in the manner pointed out by statute. Immediately upon the cancellation of the notes and the marginal entries of satisfaction being made, the legal title passed from said trustees back to Wells the mortgagor, and revested in him. It was April 3, 1890, when the notes were thus canceled and the records of the deeds of trust thus satisfied in Lincoln county, and on September 19, 1890, plaintiffs acquired all of L. M. Wells' interest in the 655 acres in Lincoln county, including his legal title thereto. Our position that the plaintiffs have the legal title to the Lincoln county portion of the "Coles lands" is in no manner shaken, because of some decisions, which hold that under certain circumstances a marginal entry of satisfaction made through mistake, and disconnected with fraud, may be set aside by a court of equity It suffices to say, that the marginal entries of satisfaction had never been set aside at the commencement of this action, and that Mr. Estes having made them in consummation of a fraudulent scheme, and one which he has been adjudicated to have actively participated in, by the courts, is not entitled to have them set aside because courts of equity will assist neither party detected in a fraud, but will leave each in the exact position where his own fraudulent conduct has placed him. Hancock v. Blackwell, 139 Mo. 440. (2) The second assignment of error is well taken because defendant Estes' marginal entries of satisfaction were part and parcel of the fraudulent design to conceal Wells' property from the reach of other creditors and to give to the public the impression that the transaction was *bona fide*. In other words Estes used his *bona fide* mortgage debts to aid Wells in the perpetration of a fraud, and a part of the scheme was, for him to cancel his mortgage notes, enter satisfaction of the deeds of trust on the margin of the record, and falsely claim full ownership of the land. Van Wyck v. Baker, 16 Hun. 168; Davis v. Leopold, 87 N. Y.

620; Ladd v. Wiggin, 35 N. H. 421. Where the grantee participates in the actual and intended fraud he will be granted no relief when his fraudulent deed has been set aside. The rule has been often announced in this State, that where a creditor uses his own *bona fide* debt or security to assist a debtor in placing his property beyond the reach of other creditors even though he only secures his own debt, the transaction as to the other creditors is void in *toto* and his debt will be postponed until other creditors are satisfied. Gutzwiller v. Lackman, 23 Mo. 168; Porter v. Stephens, 40 Mo. 229; Allen v. Berry, 50 Mo. 90; Shelley v. Boothe, 73 Mo. 74; State ex rel v. Hoke, 102 Mo. 410; Conn. M. L. Ins. Co. v. Smith, 117 Mo. 261; Tube Works Co. v. Machine Co., 118 Mo. 365; Bolan v. Ross, 120 Mo. 208; Cordes v. Staszer, 8 Mo. App. 61; McNichols v. Rubleman, 13 Mo. App. 515; Hanna v. Finley, 33 Mo. App. 645. And that no relief will be granted to parties participating in such fraudulent transaction, but the court will leave them just where it finds them. Brown v. Finlay, 18 Mo. 375; Hamilton v. Schull, 25 Mo. Mo. 166; Larimore v. Tyler, 88 Mo. 668. (3) Though an ejectment suit is in its inception purely a legal action, yet where the answer sets up an equitable defense, and prays for affirmative relief as in the case at bar, *ipso facto*, it is converted into a suit in equity, triable on the chancery side of the court, and must be disposed of on equitable principles, as to all parties in the suit. Kostuba v. Miller, 137 Mo. 172; Sutton v. Dameron, 100 Mo. 149; Swon v. Stevens, 143 Mo. 384; Allen v. Logan, 96 Mo. 598; O'Day v. Conn., 131 Mo. 321; Schuster v. Schuster, 93 Mo. 443. (4) If the holder of a mortgage purchases the equity of redemption, a merger takes place, the mortgage debt is satisfied and the estate discharged from the incumbrance. McLean v. Weise, 22 Ill. App. 272; Pringrey on Mortgages, 1036, 1037; Jones on Mortgages, 870; Baimis v. Brown, 71 N. C. 507; Weiner v. Henity, 17 Ill. 259. (5) Such purchase however may or may not create a merger according to the interest or benefit of the owner of the two

Martin v. Turnbaugh.

estates, but he may elect, and in the absence of any evidence of election, the law presumes that he elected to adopt that status most beneficial to him, but when his intent and election are once made clear and manifest, his status becomes fixed, and he can not afterwards change it at will, particularly after the rights of third persons have intervened. Irish v. Clayton, 10 Vt. 81; Marshal v. Wood, 5 Vt. 250; Greenough v. Rolfe, 4 N. H. 363; Jeremy's Lessee v. Wood, 20 Ohio 261. (a) Where a mortgagee purchases at execution sale against the mortgagor, a part of the land covered by his mortgage, the mortgage becomes discharged and the mortgage debt extinguished. Bunch v. Graves, 12 N. E. Rep. 514; Drury v. Holden, 13 N. E. Rep. 547. (b) His bid is presumed to be the value of the land in excess of his entire mortgage debt. Blackley v. Branyan, 2 S. E. Rep. 319; Belleville Bank v. Reis, 26 N. E. Rep. 646. (c) And the portion so purchased becomes the primary fund for the payment of the debt, and by such purchase it is paid and extinguished. Biggins v. Brockman, 63 Ill. 316; Speer v. Whitfield, 10 N. J. 107; Murphy v. Elliott, 6 Blackf. 432; Russell v. Piston, 7 N. Y. 171; Gregory v. Savage, 32 Conn. 264; Coburn v. Stevens, 36 N. E. Rep. 132; Estate of Dull, 137 Pa. St. 116; Thomas v. Simmons, 103 Ind. 538; Lyman v. Gedney, 114 Ill. 388; Cook v. Bailey, 146 Pa. St. 328. (d) If holder of a first mortgage purchases the equity of redemption at a sale upon execution, the sale being made subject to the mortgage, the purchase operates as a payment of the mortgage debt, and he has no further remedy on the debt, and this on the principle that a party can not sue himself. Speer v. Whitfield, 10 N. J. Eq. 107; Biggins v. Brockman, 63 Ill. 316; Murphy v. Elliott, 6 Blackf. 482.

*Pearson & Pearson* for respondents.

(1) Defendant was entitled to have marginal entries of satisfaction set aside, because they were no part or parcel of the

transaction of the fraudulent conveyance. That there was no consideration for the satisfaction, and that said notes have never been paid, nor have the deeds of trust ever been satisfied. St. Louis v. Priest, 103 Mo. 652. A court of equity has no power, nor disposition, to in any manner punish Mr. Estes for the part he took in the alleged fraudulent conveyance any further than force him to take nothing by reason of such fraudulent conveyance. It does not look at persons, but at transactions. Because the warranty deed from Wells to Estes was fraudulent, it will not hold that a deed of trust made years before should be held for naught. Bobb v. Woodward, 50 Mo. 95; Bank v. Winn, 132 Mo. 80; White v. Catzhausen, 129 U. S. 329; Ladd v. Wiggin, 69 Am. Dec. 551; Haven v. Low, 9 Am. Dec. 25; Miller v. Zollison, 14 Am. Dec. 712; Bump on Fraud. Convey. (4 Ed.), sec. 484; Wait on Fraud. Convey., sec. 389. (2) Plaintiffs can not recover because there was an outstanding title at the time of the commencement of their suit. It has been held in this state by an unbroken line of decisions that "a plaintiff to recover in ejectment must show that he had the legal title at the time suit was commenced." Dunlap v. Henry, 76 Mo. 106; Gurno v. Admrs. of Janis, 6 Mo. 330; Norcum v. D'Oench & Ringling, 17 Mo. 99; Ford v. French, 72 Mo. 250. (a) It is sufficient for the defendant in an ejectment suit to defeat recovery by setting up and showing an equitable title in himself. Gooch v. Botts, 110 Mo. 419; Clyburn v. McLaughlin, 106 Mo. 521; Swope v. Weller, 119 Mo. 556; St. Louis v. Schulenberger, 98 Mo. 613; Seiberling & Co. v. Tipton, 113 Mo. 373; Allen v. Logan, 96 Mo. 591. (b) A defendant in ejectment, in possession of land under a deed of trust or mortgage which has become forfeited, by the default of the debtor, may protect his possession by virtue of his outstanding title under deed of trust or mortgage. McCormick v. Fitzmorris, 39 Mo. 24; Hubble v. Vaughn, 42 Mo. 138; Johnson v. Houston, 47 Mo. 227; Honaker v. Shough, 55 Mo. 472; Harrington v. Fortner, 58

Mo. 460; Hunt v. Selleck, 118 Mo. 588; Priest v. St. Louis, 103 Mo. 657.   (3)   "In a plain ejectment suit plaintiff, if entitled to recover, should have judgment for possession.   He can not have a degree for equitable relief, although an equitable defense may be pleaded."   Springfield Engine and Thresher Co. v. Donovan, 147 Mo. 622.   (4)   We do not consider the question of merger of sufficient importance to discuss at length in this case, but will simply say, " there is no merger, when the holder of a note secured on land by a deed of trust, in the nature of a mortgage, acquires title to the land through another source."   Rowse v. Johnson, 66 Mo. App. 57.

MARSHALL, J.—*Ejectment to recover fifty-six acres of land in Lincoln county.*

In 1869 Lemuel M. Wells purchased from Edward Coles a tract of land aggregating . three thousand and one and twenty-five one-hundredths acres, of which 2346 25-100 acres lay in Pike county, and 655 acres lay in Lincoln county.   It was all one contiguous body of land, and the dividing line between Pike and Lincoln counties placed the parts specified in those counties respectively.   On September 20th, 1872, Wells borrowed $22,500 from Hudson E. Bridge, giving his note therefor, payable five years after date, and secured the note by a deed of trust covering the whole tract to George E. Leighton as trustee for Bridge.

Thereafter on the 17th of March, 1879, Wells borrowed $9719.97 from Fielden Estes, and gave him his note therefor, payable one day after date, and secured it by giving a second deed of trust on the entire tract, to N. B. Griffith as trustee for Fielden Estes.

Estes afterwards purchased the Bridge note and deed of trust, and on May 18th, 1887, the total debt, principal and interest of the two notes, amounted to $48,880.03, and on that date Wells conveyed the whole property to Estes, by a

warranty deed, for an expressed consideration of $48,880.03, and thereupon Estes released the two deeds of trust on the margin of the records, and was put into possession of the land by Wells.

Prior to and on the 18th of May, 1887, when Wells conveyed to Estes, there was a suit pending against Wells, by James G. Reeds, administrator of C. C. Wells, in the circuit court of Pike county, which ripened into a judgment, on April 17th, 1888, against Wells for $31,390.45. An execution issued thereon and the sheriff sold the whole property. Estes became the purchaser at this sale of the 2,346.25 acres that lay in Pike county, and the plaintiffs became the purchasers of fifty-six acres of the 655 acres that lay in Lincoln county, for $505, and other persons, whose names are not disclosed by this record, became the purchasers of the remainder of the 655 acres.

Thereupon these plaintiffs began an action to set aside the deed of May 18th, 1887, from Wells to Estes, on the ground that it was a fraudulent conveyance, made to hinder, defraud and delay the creditors of Wells, and this action resulted in a decree as prayed. [Martin v. Estes, 132 Mo. 402.]

Then this action of ejectment was instituted. The petition is in the usual form. The answer of defendant Estes is a general denial, and an equitable defense and cross action, in which he sets out the Bridge and his own deeds of trust, the fact of the execution and subsequent setting aside of the warranty deed from Wells to him, the entry of satisfaction of the deeds of trust, that he is and has been in possession of the land ever since the execution of the warranty deed, that neither the plaintiffs nor any one for them have offered to pay the debts secured by the deed of trust, the payment of the taxes on the land, and then asks that the entry of satisfaction of the deeds of trust on the margin of the records be set aside and canceled, and that he be given a lien on the land for the taxes and improvements.

The plaintiffs say that the reply contains:

"1st.   A general denial of all allegations in the answer except those specially admitted to be true.

"2d.   An admission that L. M. Wells, deceased, is the common source of title.

"3d.   An admission of the giving of the first and second deeds of trust on the 'Coles lands' to Leighton and Griffith as trustees for Bridge and Estes, respectively.

"4th.   An admission that Wells and wife conveyed the 'Coles lands' to Estes by their deed of May 18, 1887, and the giving of a written agreement by Estes to reconvey to him on certain terms.

"5th.   An admission of the marginal acknowledgment of satisfaction of the debts described in the two deeds of trust on the 'Coles lands' by Estes, as recorded in Pike and Lincoln counties and the release of the land from lien of same and the cancellation of the mortgage notes.

"6th.   Allegations of the recovery of a judgment by Reeds, administrator of C. C. Wells, against L. M. Wells, the issuance of an alias execution thereon to Lincoln county, and the purchase by plaintiffs of the Lincoln county portion of said 'Coles lands' at sheriff's sale and the reception of a sheriff's deed therefor.

"7th.   Allegations of the rendition of a decree in their favor setting aside said warranty deed of May 18, 1887, for fraud, etc., and its affirmance by the Supreme Court.

"8th.   Allegations that even if L. M. Wells was *bona fide* indebted to said Estes to an amount on the notes secured by the two deeds of trust on the 'Coles lands' aggregating $48,880.03 on May 18, 1887, the marginal entries of satisfaction of said recorded deeds of trust and the cancellation of said notes, were but part and parcel of a fraudulent scheme and conspiracy between him and said Wells to defeat the latter's creditors in which said Estes actively assisted and participated, and by using his debts to and in such a fraudulent

attempt, he is estopped in equity and good conscience from now setting up said deeds, or having them restored as liens on the lands in controversy.

"9th. Allegations that Estes' said debts were fully paid off and the 'Coles lands' discharged from the liens thereof, or from the right to have them reinstated as liens, for the reason that the Pike county portion of said 'Coles lands' alone, was reasonably worth $60,000, a sum largely in excess of the aggregate of the two mortgage debts, and that in September, 1888, Estes acquired by sheriff's deed at a sale under execution, Wells' equity of redemption in said Pike county portion of the 'Coles lands,' together with the 'Ashley lands,' and that the union of titles which Estes then claimed to have as mortgagee, with Wells' equity of redemption acquired at such sheriff's sale, was a merger and operated as an extinguishment of all his rights as a creditor or mortgagee, and vested him with absolute ownership of the Pike county portion of the 'Coles lands,' and destroyed the relation of debtor and creditor between Wells and himself, and that neither of the parties thereafter regarded their status to be other than stated above, and that Estes elected to thus define his status, by ceasing to regard the written agreement to redeem between him and Wells as longer remaining in force, and by failing thereafter to keep any account of the rents and profits and taxes originally designed to be used on a settlement between him and Wells, in case the latter should redeem, and by taking full and absolute control of the land, and in the suit instituted by these plaintiffs to set aside the deeds of May 18th, 1887, pleading in his answer absolute ownership in fee of the 'Coles lands,' and by concelling his mortgage notes and making marginal entries of satisfaction of the recorded deeds of trust, and by returning to Wells the $2000 previously paid by the latter on the redemption agreement.

"10th. An allegation that the effect of the decree setting aside the warranty deed from Wells and wife to Estes dated May 18th, 1887, at the instance of these plaintiffs was

only to annul the same as to the Lincoln county portion of
the 'Coles lands,' leaving the said deed in full force so far as
the Pike county portion thereof was concerned, thus creating
clearly a merger of estates, and an extinguishment of his
debts and liens on the land therefor.

"11th.   An allegation of an agreement between Estes
and Wells as to the 'Ashley lands' whereby the excess of its
value over the sum expended by Estes thereon, amounting to
about $10,000, should be repaid to said Wells and that such
surplus together with the $2,000 previously paid by Wells
on the redemption agreement should be credited on Estes'
debts even if he should be reinstated as a creditor and remitted
to the position of mortgagee.

"12th.   An allegation denying the rights of Estes as the
beneficiary in one deed of trust and the assignee of the bene-
ficiary in the other, to enter into the possession of any part of
the Lincoln county portion of the 'Coles lands' or to occupy
the position of mortgagee in possession after condition broken,
because of his participation in the fraud on Wells' creditors,
and that no debt exists, and if one ever existed, it should be
credited with the amount of overplus on the 'Ashley lands'
of $10,000 and with the $2,000 paid on the redemption
agreement, and with $60,000 the reasonable value of the
Pike county portion of the 'Coles lands,' and with the excess
of rents and profits on all the lands over his expenditures
for taxes, improvements and repairs, and that upon such
accounting the debt of $48,880.03 would be paid off and fully
discharged with a large surplus left in Estes' hands without
resorting to any portion of the 'Coles lands' lying in Lincoln
county and claimed by these plaintiffs."

The trial court treated the case as one converted into
equity by the defendant's answer, and entered a decree anul-
ling and cancelling the entry of satisfaction of the deeds of
trust on the margin of the records, but refused the plaintiffs
the right to have an accounting or to show that the debts
secured by the deeds of trust had been extinguished, holding

that such questions could only be considered in an action to redeem, and denied the plaintiffs a judgment for possession.

After necessary exceptions saved and steps taken, the plaintiffs appealed.

## I.

The court properly treated the case as one in equity, for the defendant's answer and cross bill was not only an equitable defense but it sought affirmative relief which a court of equity alone had power to give.   [Swon v. Stevens, 143 Mo. 384; Lewis v. Rhodes, 150 Mo. 498; Dunn v. McCoy, 150 Mo. 548.

## II.

The reply of the plaintiff raised equitable defenses to the claim for equitable relief asked by the defendant in his answer; that is, it pleaded the extinguishment of the deeds of trust, first, by the fraud of the defendant in accepting the warranty deed and the release of the deeds of trust on the margin of the records, second, by merger of the qualified title conveyed by the deeds of trust into the absolute title, so far as the Pike county lands were concerned, acquired by Estes at the sheriff's sale under the judgment against Wells' and, third, by the payment of the debt secured by the deeds of trust.

These were proper matters of defense to plaintiffs' claim for equitable relief, and if any one of them was established in favor of the plaintiffs the result would necessarily be a denial of the defendant's prayer, and his entry of satisfaction of the deeds of trust would not be set aside, and this would leave no defense to the plaintiffs' claim to the possession of the land.

The trial court, however, held that while this is true, these matters could not be tried in this action, but that the plaintiffs must be reverted to a separate bill in equity to redeem.   In this that court committed error.

This case is a strong illustration of the difference between proceedings at common law and under our code. It is a plain suit in ejectment. When it was begun the title was in the plaintiffs and the defendant was in possession, without any right of record. But by his answer the defendant asks the court, on its chancery side, to raise up or restore an equitable right to the possession, by cancelling the entry of satisfaction of the deeds of trust, and reinstating them. Unless and until the court does so, which it can only do after a trial, the defendant has shown no defense to the plaintiffs' right to the possession of the land. At common law the defendant could not have interposed such a defense or asked such relief in the ejectment suit. The defendant would have been compelled to ask the aid of a court of equity, and the proceedings in the ejectment suit would have been stayed until the determination of the equity suit. When the defendant went into a court of equity and asked to have the entry of satisfaction annulled, and the deeds of trust reinstated, the plaintiff could have defended on the grounds stated in his reply, that is, that the defendant had lost his right to have the relief asked because of his fraud, by virtue of the merger or by reason of the payment of the debt secured by the deeds of trust. If the plaintiffs herein (who would, of course, be the defendants in such a suit in equity) established any of these defenses, the defendant herein (the plaintiff in such an equity suit) would be denied the relief sought, the equity suit would be ended, and the defendant would have no further defense in the ejectment suit, and hence the judgment would be for the plaintiffs.

No one denies that in such a suit in equity the plaintiffs could interpose the defenses named. No one will contend that if this defendant had commenced a suit in equity to have his entry of satisfaction annulled and his deeds of trust reinstated, as soon as the warranty deed from Wells to him was set aside, that the plaintiffs herein (who would be the

necessary defendants in such an action) could plead the defenses here set up or could ask for an accounting and for leave to redeem. Every one admits that it is elementary law that when a court of equity obtains jurisdiction of a cause it has power to retain jurisdiction until it does complete justice between the parties.

It was the very purpose of the code, when the common law and equity powers were centered in the same court, to abolish this circumlocution, and hence the petition may now have a count at law and a count in equity (R. S. 1889, sec. 2040), the answer may contain a legal defense, an equitable defense and an equitable cross bill or counterclaim (R. S. 1889, sec. 2050), and the reply may set up legal or equitable defenses to the new matter set up in the answer (R. S. 1889, sec. 2052). The object of all which is to simplify proceedings, and to settle the whole controversy between the parties in the one action. If the action is one at law, and the answer seeks affirmative equitable relief or pleads a legal defense and the reply raises an equitable defense to the affirmative legal defense set up in the answer, the equitable claim or defense must be tried by the court, sitting in equity, before the action at law can be tried; and this is the statutory substitute for the relief formerly afforded by courts of law and courts of equity collectively. In this case the court has stayed the plaintiffs' suit at law while it heard defendants' cross action in equity, but it has refused to hear the plaintiffs' defense to the defendants' cross action in equity, and thus it has granted defendant the equitable relief he asked and denied the plaintiffs the right to defend in equity against the defendants' equitable claim, and also denied the plaintiffs the relief at law they asked.

The conditions thus presented in this case are that when this ejectment suit was begun, the defendant had no defense at law and the plaintiffs were entitled to a judgment. But by his answer the defendant stayed the suit at law until his

Martin v. Turnbaugh.

claims for equitable relief were heard. The court, sitting in equity, heard defendant's claim and refused to hear the plaintiffs' equitable defenses thereto; awarded the defendant the equitable relief he asked, and denied the plaintiff any kind of relief either legal or equitable. Thus a suit at law is converted into a suit in equity so far as the defendant is concerned, but the plaintiffs are reverted to another proceeding in equity to undo what the court sitting in equity has done in this case, and if they succeed, then they must come again into a court of law.

The error of the trial court was in not dealing with the whole controversy when it tried the case as one in equity. If it was a case in equity so far as the defendant was concerned, it was the duty of the court, in trying defendant's claim in equity, to hear and determine all the equitable defenses which a court of equity would or could hear if it had been an original proceeding by Estes to have his entry of satisfaction annulled and his deeds of trust reinstated. In other words, the court did equity for Estes but refused to do it for Martin, and told him to go into a court of equity to get relief, notwithstanding he was already in a court of equity. This is more circumlocution than existed before the adoption of the Code.

For this error this judgment can not stand.

### III.

As the case must be retried it is proper, however, to add, that there was no error in setting aside the entry of satisfaction of the deeds of trust. The defendant satisfied the deeds of trust when he obtained the warranty deed to the land covered by the deeds of trust upon the idea that the deeds of trust became merged in the warranty deeds. This was the legal effect of the union of the lesser estate and qualified title with the absolute estate and full title in the same person, claiming in the same right. But when the absolute title

was taken away from the defendant, it did not take away the qualified title. The two stood upon entirely independent bases, and were supported by very different considerations. The deeds of trust were honest. The warranty deed was fraudulent. When the court annulled the warranty deed, it did not act upon or even consider the deeds of trust. They were not then before the court, but all parties then conceded that the deeds of trust were *bona·fide* and valid. Hence if there never had been a release of the deeds of trust, when the warranty deed was annulled, the legal merger of the lesser into the absolute estate would have become of no effect and the deeds of trust would have remained as subsisting liens on the property. Likewise, as the deeds of trust were released by Estes upon the theory of merger, when the warranty deed was annulled he was entitled to have his deeds of trust reinstated, and the trial court committed no error in so treating them.

It is conceded that both of these deeds of trust were honest, *bona fide* and valid in their inception, and that they were existing liens on the land on May 18th, 1887, when the warranty deed from Wells to Estes was made. It is contended, however, that because the warranty deed was fraudulent and because Estes was a party to the fraud, therefore, when the warranty deed was set aside its effect was to also set aside the deeds of trust or at any rate to postpone them to the rights of the plaintiffs, who stand in the shoes of the creditors of Wells. If this contention is correct, the plaintiffs would get the land discharged from the lien of the deeds of trust, and this is unquestionably the purpose of the plaintiffs.

In support of this contention, the learned counsel for the plaintiffs cites a great array of cases, which hold that money paid to aid an owner to fraudulently dispose of his property, can not be decreed a lien on the property when the fraudulent deed is set aside, and that the claim for such money by such fraudulent purchaser is postponed to the pay-

ment of the honest debts of the fraudulent grantor; and the reason generally given is that it would encourage such fraudulent transfers if the grantee was sure to get back his money even if the fraudulent deed was set aside. The doctrine decided by these cases is universally recognized and followed, and this court has many times approved it, but it has no application to this case. Estes paid nothing when the warranty deed was made. The consideration for that deed was the exact amount of the principal and accrued interest of the two deeds of trust. Therefore Estes is not now asking that any money paid by him to aid in the fraud or to secure the conveyance, be adjudged a lien on the land or that he be reimbursed anything he expended in the perpetration of the fraud. His only claim is that that which was honest before the fraudulent deed was made be decreed to be honest after that deed is annulled.

Courts will undo what has been fraudulently done, and restore the *status quo* of the parties. They will also refuse to aid a party to a fraud to recover back what he expended in perpetrating the fraud so far as such a recovery would conflict with the rights of innocent parties. But civil courts impose no other punishments for such wrongs. They do not impose any fines or other forfeitures beyond the forfeitures of the advantages gained by the fraud. They do not possess the power to take away any lawful rights either party to the fraud possessed prior to the perpetration of the fraud and which exist wholly independent of the fraud. [Bump on Fraud. Conv. (4 Ed.), sec. 484; Bank v. Winn, 132 Mo. 1. c. 91 Bobb v. Woodward, 50 Mo. 1. c. 101.] When the fraudulent deed from Wells to Estes was annulled it did not operate on or affect the deeds of trust, and but for the release thereof by Estes, they would have remained as valid subsisting liens on the land, and when the release was canceled and the deeds of trust thereby reinstated by the court in this case, the *status quo* of the parties prior to the execution of the fraudulent

deed was restored, and thus the parties to that fraud were punished as far as a civil court could punish them, and the honest rights of the parties, respectively, were subserved and enforced.

When Estes purchased the Pike county part of the land at the sheriff's sale under the execution in favor of C. C. Wells, administrator, against Lemuel M. Wells, he united, at once, in himself the lesser, qualified title embraced in the deeds of trust with the equity of redemption which the sheriff sold, and thereby acquired the absolute title to that part of the lands, and the deeds of trust were at once merged into the absolute title as to the Pike county lands. And when plaintiffs purchased at that sheriff's sale, a part of the Lincoln county tract which was covered by those deeds of trust, they acquired the equity of redemption in the land so purchased, and hold it subject to the deeds of trust. So holding, they have the right to redeem, because those deeds of trust have never been foreclosed and hence the equity of redemption has never been cut off.

Estes' purchase of the equity of redemption in the Pike county land was, *ipso facto*, a redemption of the land from the deeds of trust on that land, because he was then the owner of the deeds of trust, and the debts secured by those deeds of trust were liquidated and extinguished to the extent that the value of the Pike county lands bore to the total value of all the land covered by the deeds of trust. But as to the part of the debts so left unpaid, Estes, as the owner of the deeds of trust, was and is entitled to hold and enforce the deeds of trust against the Lincoln county lands covered by the deeds of trust. And this is what the plaintiffs hold the lands subject to, and the amount and extent of which they have a right to have ascertained and decreed in a court of equity, the only forum where such questions can be adjudicated. That is, Estes has a right to look to the Lincoln county land for the payment of the balance due on his deeds of trust, which balance con-

sists of the proportion of the whole debt as it existed on May 18th, 1887, that the value of the Lincoln county lands bears to the total value of all the lands covered by the deeds of trust. And as Estes has been in possession of the lands since May 18th, 1887, he should be charged with the rents, issues and profits he has received from the Lincoln county lands since that date, and be credited with the taxes he has paid, and also with the same proportionate part of the two thousand dollars he received from Wells after the 18th of May, 1887, notwithstanding his subsequent return thereof to Wells. If the result shows a balance due Estes, he should have a decree declaring his deeds of trust valid liens on the Lincoln county lands to the extent of such balance, and the plaintiffs should have leave to redeem within a reasonable time to be specified in the decree, by paying such balance so found, and upon the payment thereof they should be decreed the possession of the lands, but upon their failure so to do the deeds of trust should remain as liens to secure such balance, the plaintiffs be denied a judgment for possession, and the matter left with Estes holding a deed of trust on the land for such balance, and the plaintiffs having the equity of redemption. Thereafter Estes could enforce his deeds of trust by foreclosure as therein provided, and the plaintiffs could take such steps as is common to the owners of the equity of redemption in lands covered by deeds of trust. Of course if it should turn out that there was no balance due Estes, he would not be entitled to have the deeds of trust reinstated, or to any claim against the land, and in that event the judgment should be for the plaintiffs on the defendant's equitable cross-action, and for plaintiffs for possession of the land.

These conclusions necessarily dispose adversely of the plaintiffs' contention that the value of the Pike county lands, with the rents, issues and profits arising therefrom since May 18th, 1887, should be deducted from the whole debt secured by the two deeds of trust before the Lincoln county land can

be looked to for the payment of any part of the debt.    Estes
and the plaintiffs were the purchasers respectively of the Pike
county and Lincoln county lands.    Estes would have as much
right to insist upon the Lincoln county land being exhausted
before the Pike county land was looked to, as the plaintiffs
have to have the Pike county land sold or applied first, before
recourse could be had to the Lincoln county land.    Equity
will apply the debt upon each tract in the proportion that the
value of each tract bears to the value of the total land securing
the debt.

It also appears that L. M. Wells owned about six hundred
acres of land in Pike county, called the "Ashley lands,"
outside of that heretofore referred to and which was not in-
cluded in the two deeds of trust or in the fraudulent deed of
May 18th, 1887.    This Ashley tract is said to be worth
$18,000, and to have had a deed of trust on it for about
$7,000.    This land was also levied on and sold by the sheriff
at the same time the land heretofore dealt with was sold, and
Estes became the purchaser thereof.    It seems Wells after-
wards paid $2,700 of the deed of trust on the Ashley land,
and Estes paid the balance, so that the whole amount Estes
paid for the Ashley land was about $11,000, and it is claimed
that Estes agreed with Wells to pay him or his heirs the
difference between what he had paid, to wit, $11,000, and
the value of the land to wit, $18,000, and plaintiffs now ask
that this difference be applied towards the payment of what-
ever balance there may be found to be due on the debts
secured by the two deeds of trust with which we have been
dealing in this case.

This claim is wholly untenable.    The Ashley land was
never pledged to secure the debts secured by these two deeds
of trust.    If Estes owes anything by reason of such alleged
agreement he owes it to the heirs, or legal representatives or
creditors of L. M. Wells.    Plaintiffs do not fall within any of
these classes.    They acquired at the sheriff's sale the equity

of redemption in the Lincoln county lands, which L. M. Wells then had.    They acquired no right to the Ashley lands, nor to any uncollected claim which Wells had against any other person, nor did they acquire any right to have any surplus arising from the sale of any other land applied to the payment of these two deeds of trust.    If there is or may be found any such other money or claim belonging to Wells, it will go to his administrator to be by him paid to his creditors or distributed to his heirs.    When plaintiffs paid $505 for the fifty-six acres of land involved in this case, they paid what they thought, and the law presumes, was the value of the land over and above what this land's proportion of the debt secured by the two deeds of trust amounted to.    In other words they got the right to pay that proportion of the debt, if Wells did not do so, and if neither did so, and the land was sold to pay the debt, they would lose what they bought.    But they acquired no right to compel Wells to use any other money he might have to pay the mortgage, nor even to pay the mortgage if he had an unlimited amount of money with which to do it. If plaintiffs wanted to protect themselves, they could pay off the deed of trust and thereby protect their land, but they could not become thereby the owners of the notes evidencing the debt, nor of the mortgage securing those notes.    If Wells or any one for him paid the debts secured by the deeds of trust, it would of course enure to plaintiffs' benefit, but plaintiffs are not the legal representatives of Wells, and can not sue for and recover any debt from any person who owes Wells, nor require any such person to account for what he may owe Wells.    In fact, the allegation is that the secret agreement between Estes and Wells was that the difference as to the Ashley lands should be paid to him or his heirs.    It is not even pretended that there was any agreement that it should be applied to the payment of these two mortgages.    In stating the account as to how much is due on those deeds of

VOL. 153 mo—13

trust as a lien on the Lincoln county land and especially as to the land involved in this suit, this Ashley land must not therefore be taken into account.

The judgment of the circuit court is reversed and the cause remanded to be proceeded with in accordance herewith, and with directions to permit the plaintiffs, if they so desire, to amend their reply so as to include proper averments and prayers for leave to redeem.

It is so ordered.   All concur.