## CHARLES C. WHITE, Appellant, v. GEORGE MIL-LION, Respondent.

Kansas City Court of Appeals, October 2, 1905.

1. **FRAUDULENT CONVEYANCE: Fictitious Debt: Fraudulent Use of Valid Debt: Instruction: Evidence.** The evidence is reviewed and found sufficient to support an instruction that if the debt for which the property was transferred was fictitious or even valid, but fraudulently used with the knowledge of the transferee, then the finding should be for the defendant.

2. ———: **Father and Son: Preference.** While in itself there is no fraud where a son in failing circumstances pays a debt to the father to the exclusion of other debts, and the father if innocent will be protected even though the son may intend to defeat other creditors, and even though the father afterwards aids the distressed son, yet such facts in connection with other facts and circumstances should be considered in passing on the motive of the parties.

3. ———: **Fair Dealing: Presumption.** Though a transaction consists as well with honesty as with its antonym, the presumption of its validity arising therefrom should not be used to determine issues the subject of conflicting evidence, or overweigh reasonable and profitable conclusions to be drawn from all the evidence.

4. ———: **Good Faith: Refuge.** The fact that formalities of a transaction are perfect will not shield it from the effect of fraud, since fraud has no sanctuary and may be hunted and destroyed in any of its refuges.

5. ———: **Landlord's Lien: Debt.** A landlord's lien like all other liens stands or falls with the debt it secures, and the sale of a crop to the landlord in payment of a debt merges the lesser title under the lien into the full title of ownership and the debt is extinguished.

6. ———: ———: **Other Creditors.** Property burdened with a landlord's lien may be the subject of a fraudulent conveyance and is not exempt by reason of the lien from the payment of other creditors; and if the landlord accept the property in payment of his debt with the secret agreement that it is not to be so applied, but is to be held for the tenant's benefit, the transaction is fraudulent, and the property may be applied to the payment of the tenant's debts.

White v. Million.

7. ———: ———: **Statu Quo.** While a transfer from the tenant to the landlord is valid between them it may be fraudulent as between the creditors and the setting aside of the transfer does not reinstate the lien, but the property goes to the debts of the other creditors.

Appeal from Atchison Circuit Court.—*Hon. W. C. Ellison,* Judge.

AFFIRMED.

*W. E. Mitchell* and *John P. Lewis* for appellant.

(1) The court erred in refusing the peremptory instruction requested by the plaintiff. The plain facts of the case, stripped of the froth and verbiage injected into it for the sole purpose of mistifying and prejudicing the jury, fully warranted and required such instruction. (2) Under the facts, even if there were no question of landlord's lien, the father had a perfect right to make the purchase under that well known line of decisions, commencing with and following: Shelly v. Boothe, 73 Mo. 74; Kiley v. Hickcox, 70 Mo. App. 623. (3) The court erred in submitting to the jury any question of fraud or good faith. It was not merely a race between creditors, which Simpson Finnell had a right to make; but it was more than that; in so far as he held a lien, he was taking property in which he had an interest which was superior to all claims or claimants. (4) The court not only erred in refusing the peremptory instruction, but also erred in refusing appellant's instruction numbered 2, involving the effect of the landlord's lien on the hay. (5) The landlord was not only taking what he had the right to take, but, while the lien lasted, and that was for eight months after the levy, the crop was not subject to execution in favor of any third party. Knox v. Hunt and Porter, 18 Mo. 243-6; Sandes v. Ohlhausen, 51 Mo. 163; Price v. Roetzell's Adm., 56 Mo. 500; Davis v. Land, 88 Mo. 163; Bank v. Guthery, 127 Mo. 189; Holt v. Colyer et al., 71 Mo.

App. 280; Lane v. Pollard, 11 Mo. App. 330; White v. Million, 102 Mo. App. 437; Stokes v. Burns, 132 Mo. 225.

*T. S. Stevens* and *Hunt & Bailey* for respondent.

(1)  Appellant predicates error upon the submission to the jury of the question of fraud or good faith in the transaction between William Finnell and his father; also assumes that there was no evidence that the hay was not taken to apply on William's debt to his father. In this appellant is in error, as fraud was pleaded by defendant and there was the most convincing proof as found by the jury that the entire claim of Simpson Finnell against William was fraudulent in fact.  (2)  The court will not direct a verdict on the issue of bona fides of the sale of personal property, where the evidence thereon is conflicting.  Frederick v. Allgaier, 88 Mo. 598; White v. Million, 102 Mo. App. 437.  (3) It is only when the verdict is against all the reasonable probabilities, the entire evidence being considered, that an appellee court is authorized to conclude that the finding was the result of mistake, passion or prejudice.  Hirsch v. U. S. Grand Lodge, 78 Mo. App. 358; State v. Shackelford, 148 Mo. 493.  (4)  The court cannot usurp the province of the jury, and when there is evidence to hang the verdict on, it must stand.  Tower v. Pauley, 76 Mo. App. 287; Atchison, etc., Co. v. Saddler, 38 Kan. 128; Swan v. Waldo, 73 Iowa 749; Gilbert v. Railway, 11 Ind. 365; Muse v. Stern, 82 Va. 83. (5)  The appellate court will never weigh evidence for the mere purpose of determining the preponderance.  Iller v. Bland, 117 Ind. 457; Dickens v. Des Moines, 74 Ia. 216.  (6)  It is for the trial court in such cases to set aside the verdict and not the appellate court.  Hays v. Meckle, 78 Mo. App. 383; Parsons v. Mayfield, 73 Mo. App. 309; Huth v. Dohle, 76 Mo. App. 671; Chouquette v. Railroad, 152 Mo. 152.

JOHNSON, J.—On September 24, 1901, Floyd J. Sullivan recovered judgment in the circuit court of Atchison county against Wm. Finnell, in the sum of $2,073.77. On October 30, following, he had an execution issued and placed in the hand of the sheriff (defendant here), who levied upon a quantity of hay in stack on the farm occupied by Finnell. Plaintiff brought this action in replevin to recover the property so seized, claiming that he owned it by purchase from Simpson Finnell, who bought it from William, the judgment debtor. The issues presented by the pleadings involve the good faith of the transfer. Defendant says it was fraudulently contrived to defraud William's creditors, while plaintiff insists that it was made in good faith. The case has been here before on plaintiff's appeal and was remanded for another trial on account of error found in the instructions given. [White v. Million, 102 Mo. App. 437.] On retrial defendant again prevailed and plaintiff a second time appealed.

The consideration of the sale made by William to his father, Simpson, was stated by him to be a pre-existing debt. In its instructions the court put it to the jury to say whether the debt itself had any existence in fact or was fraudulently concocted for William's benefit, and told them that "if William was not indebted to his father, or if indebted he took the hay, but not to be applied upon the debts and at a fair value, but intended thereby to assist William to avoid, hinder or delay other creditors, then such transaction would be fraudulent and void as to other creditors and this execution." Finding, either that the debt was fictitious, or if valid was fraudulently employed to shield William from the attacks of other creditors, the direction was given to return a verdict for defendant, provided the jury believed, from the evidence, plaintiff had knowledge of the fraud when he bought the hay. Plaintiff earnestly insists that the facts shown in evidence do not justify the submis-

sion of any issue to the jury, and that a verdict for him should have been peremptorily directed.

William, over fifty years old, broken in health and beset with pecuniary troubles, was living with his family upon a farm of 268 acres, owned by his father at the time Sullivan obtained judgment. He had lived there for twenty-five years and had owned the place until five years before, when his misfortunes compelled him to convey it to his father. The hay in controversy was grown upon the land in 1901 during the pendancy of Sullivan's suit. William owned it, together with some live stock and other personal property. The likelihood of its seizure by Sullivan, under execution, was discussed between father and son, and the conclusion reached to transfer all of the personal property, subject to execution, from son to father. The property, including this hay, was valued by William at $3,000. The consideration agreed upon was debts equalling that amount, among which were included two notes for one thousand dollars each, evidencing the rent of the farm for the years 1900-1. Although all of the property was, in the bill of sale executed by William, turned over in lump to pay the whole of the indebtedness, both parties to the transaction say it was the agreement between them to apply this particular hay to the payment of the rent note for the year 1901. A short time after the sale negotiations were opened by William's sons, with plaintiff, to sell him the hay. These culminated in the making of the sale which was consummated by Simpson in person. Plaintiff, without examination, bought it for $600, and immediately gave his check for that amount to Simpson, which the latter cashed. Plaintiff then commenced to haul the hay when he was stopped by the levy of Sullivan's execution. At different times after this Simpson gave William various sums of money, the exact amount is not shown, but from the admission of the parties themselves it is fair to say that in the aggregate they equalled or

exceeded the amount which plaintiff paid for the hay.
The two notes for the rent of the years 1900 and 1901
were produced at the trial, together with the written evi-
dence of the other debts making up the consideration of
the sale from William to Simpson, and the check, duly
paid, which plaintiff gave to Simpson. Both of the Fin-
nells said that the father had charged the son one thou-
sand dollars per year for rent during the period of the
latter's tenancy, and that notes had been given in set-
tlement, but the notes for other years than those men-
tioned were not produced, nor was there anything writ-
ten on the two that were, to indicate their payment. It
appears that Simpson had an iron safe in which he kept
valuable papers, and permitted William to use this safe
with him, and when the sale was made the two rent
notes were placed in an envelope in which William kept
some of his papers. No rent was ever, in fact, paid by
William to his father before this transaction, nor was
any ever paid thereafter, although William continued to
occupy the farm. Up to the time Sullivan obtained his
judgment, William raised crops and live stock on the
land and possessed considerable other personal proper-
ty, but nothing ever occurred between father and son
relative to the payment of the rent until this transac-
tion, and then only in consequence of Sullivan's pro-
ceeding. After the sheriff seized the hay, plaintiff acted
more as an impassive spectator than one who had an in-
terest at stake. The Finnells initiated the replevin suit
and obtained plaintiff's consent to the use of his name
as a party plaintiff. A witness, introduced by defend-
ant, stated that some time after the suit was started he
had a conversation with plaintiff during which the lat-
ter stated that he had no real interest in the suit, but
was aiding the Finnells in their effort to fight off Wil-
liam's creditors. Plaintiff does not deny this conversa-
tion but says that he does not remember just what he
said as he and his accusing witness were, at the time,
under the influence of liquor.

Considering all the facts and circumstances detailed in the light of the relationship between the parties, and the helpless condition of the son physically and financially, we are of the opinion that the learned trial judge acted properly in submitting to the jury the issue of good faith in the whole transaction.

In itself there is no fraud in the fact that a son in failing circumstances pays a debt to his father, to the exclusion of the payment of other debts. So long as he is vested with the *jus disponendi* of his property he may apply it as he chooses in the payment of his just debts, and the fact of the close relationship between him and the creditor he prefers is without effect upon this right. In making the preference he may be actuated rather by the purpose to defeat another creditor than by the desire to favor the one preferred, but if the creditor whom he pays is acting in good faith, for the protection of an honest indebtedness, the transaction is not tainted by such hostile or even fraudulent motive of the grantor. And further, the fact that a father who has accepted an honest preference from a son, afterwards aids him in his distress should not in itself be allowed to characterize the preference as fraudulent. Benevolence springing from parental love and solicitude is natural and commendatory. However, facts of this character, though not fraudulent *per se*, may be taken into consideration with other facts and circumstances in determining, in a given case, whether the motive prompting them was lawful or fraudulent.

In the case before us the facts if found, that shortly after receiving the preference the father returned the proceeds thereof to the son in the form of gifts or advances; that the father was in good circumstances and the son insolvent and in poor health, with a family to support, and that during a period of years preceding the transaction no rent was paid, although a lien therefor existed upon each year's crops for the rent of that year, coupled with plaintiff's admission of his own bad faith,

very strongly support the inferences either that the creation of the debt for the rent was devised as a pretext for the hindrance of other creditors, without any intention to treat it as a real obligation, and that the pretended payment of such fictitious debt was for the actual benefit of the son, or that a valid debt was fraudulently used for the debtor's benefit. We have not overlooked the principle that when the facts and circumstances shown consist as well with honesty as with its antonym, the conveyance is presumed to be fair and not fraudulent. But this presumption should not be employed except in cases where the facts and circumstances most favorable to the party asserting the existence of fraud may be harmonized with honest dealing, and should not be used to determine issues the subject of conflicting evidence, nor to overweigh the most reasonable and probable conclusion to be drawn from all the evidence.

We cannot share plaintiff's view that defendant, unsupported by direct evidence, is so overwhelmed by that of plaintiff as to make the inference of fraud a product of suspicion or speculation. Asseverations of good faith invariably accompany and follow the perpetration of fraud and count for little when opposed by condemning facts. Contrivers of fraudulent schemes always endeavor to clothe their work in verisimilitude to make it effective, hence the completeness so often encountered in the written evidence supporting the various instrumentalities employed. Notes, checks, leases, contracts and other devices afford no protection when circumstances stamp them with bad faith. Fraud has no sanctuary and may be hunted and destroyed in any of its refuges. Under the facts disclosed it was essentially a question for the jury to decide upon which side lay the weight of the evidence, and, finding any fraud, to determine its extent.

Plaintiff lays great stress upon the point that under the statute (R. S. 1899, sec. 4115) Simpson held a landlord's lien upon the hay for the rent of 1901. The

lien provided by the statute continues for a period of eight months after the maturity of the obligation to pay rent and during the time crops grown on the premises that year are not subject to seizure under any process issued in favor of any other creditor of the tenant. However, a lien of this kind, like any other lien or security, is but an incident to the debt it secures and stands or falls with it. If there was no bona fide indebtedness for rent for the year 1901 there was no lien. If there was a valid debt the sale of the hay to the landlord, in payment thereof, merged the lesser title, under the lien, into the full title of ownership, and thereupon the former became extinguished.

Property burdened with a landlord's lien may be subject to a fraudulent conveyance from the tenant to the landlord. It is not on account of the lien exempt as to other creditors, but the right of the landlord to subject it to payment of his demand for rent, without interference, is the extent of his interest in the property. When his lien expires by limitation, or in the case of the payment of his demand, either through its enforcement against the property by legal action or by the act of the tenant, the property, or what remains of it, is subject to the demands of other creditors. As in the case of other liens, while the one to whose benefit it inures may use it for the lawful purpose of collecting his debt he must not use it for the secret benefit of his debtor. From which it follows that if the landlord outwardly pretends to accept the incumbered property at a fair valuation in payment of the lien debt, but secretly agrees that it is not to be so applied, and is to be held for the benefit of the tenant, such agreement manifestly is in fraud of the rights of other creditors, for it leaves the debt of the landlord unpaid and recognized by the tenant as a just obligation and gives to the latter property that should have been used for its extinguishment, and if not so used then applied, or held subject to be applied, to the payment of his other debts

It is contended by plaintiff that when an absolute conveyance of the property subject to a valid lien made in full satisfaction of the debt secured is fraudulent and void as to other creditors of the lien debtor its annulment at the suit of a creditor prevents the merging of the lien title, and restores the status that existed when the pretended conveyance of the full title was made. From which premise counsel argue that, under the hypothesis of a valid debt which the jury, under the instructions, could have indulged the effect of finding fraud in the sale of the hay is limited to the conveyance itself and conceding that it is void as to creditors, the lien for rent was not thereby destroyed but continued to the exclusion of the right of any creditor to seize the property under process issued on account of his demand. Martin v. Turnbaugh, 153 Mo. 172, is relied upon to support this contention. In that case the court said, "Estes paid nothing when the warranty deed was made. The consideration of that deed was the exact amount of the principal and accrued interest of the two deeds of trust. Therefore, Estes is not now asking that any money paid him to aid in the fraud or to secure the conveyance, be adjudged a lien on the land, or that he be reimbursed anything he expended in the perpetration of the fraud. His only claim is that that which was honest before the fraudulent deed was made, may be decreed to be honest after the deed is annulled. Courts will undo what has been fraudulently done to restore the *status quo* of the parties. They will also refuse to aid the party to a fraud to recover back what he expended in perpetrating the fraud, so far as such a recovery would conflict with the rights of innocent parties."

This extract from the opinion is enough to show that plaintiff's position is not aided by it. In the case in hand the debt, with its incident the lien, whether valid or fictitious was actually employed to accomplish the fraud, if one was in fact perpetrated. While in the case under discussion an admittedly honest debt, se-

cured by a deed of trust, served only as the considera-
tion for a warranty deed fraudulently executed. Here,
under defendant's contention it was agreed, and the
agreement fulfilled, that William was to receive the pro-
ceeds of the hay, while in the Martin case there was no
understanding that the grantor was to receive any part
of the value of the land represented by the incum-
brance. Under the state of facts in the Martin case it
was possible to ignore the warranty deed, and deal with
the parties from the *status* they occupied before it was
made, without injury to the rights of innocent parties,
but here the *status quo* cannot be restored, for the in-
solvent William has the proceeds of the hay, obtained
by means of the fraud of his father and plaintiff.

Under these considerations we have reached the con-
clusion that the invalidity of the sale as to creditors
did not affect its validity between the parties themselves
and, good as to them, the landlord's lien was extinguish-
ed by merger and the property thereby made available
to the attacks of creditors. The court properly over-
ruled the demurrer to the evidence and the instructions
given correctly declare the law.

We have considered other points made and find
them to be without merit. Judgment is affirmed. All
concur.