## Cotton v. Hamil & Co.

1. **Homestead:** ABANDONMENT OF: WHAT CONSTITUTES. Where a party removed from his homestead and actually resided for many years in another county, repeatedly exercising the right of suffrage there, and at different times offering his homestead for sale, and no definite and fixed purpose to return and occupy it as a home is shown, it will be regarded as an abandonment of the homestead.

*Appeal from Dallas Circuit Court.*

FRIDAY JUNE 9.

THE plaintiff is a married man, and about August 1868, he with his family took up his residence in a dwelling house owned by him in the town of Adel, Dallas county, and continued to reside therein as his homestead until October 1874, when he leased his homestead and removed to the city of Des Moines. He has been since that time residing with his family at Des Moines, and at Indianola, and has not at any time returned to his former home at Adel, to reside. While in the occupancy of his homestead at Adel, he became indebted to the defendants, and on the 11th day of December, 1869, the defendants obtained a judgment against him upon said indebtedness, and in April, 1879, execution was issued upon the judgment and levied upon the property which he had occupied as a homestead.

This action was commenced by the plaintiff to restrain the sale of the property upon execution, upon the ground that the same was his homestead and not liable to be taken and sold in satisfaction of the judgment. Issue having been joined upon the petition, there was a trial in the Circuit Court which resulted in a decree for the plaintiff. The defendants appeal.

*North & Barr*, for appellants.

*M. H. Baugh* and *White & Woodin*, for appellee.

ROTHROCK, J.—There is but one question in this case. The property in controversy was the homestead of the plaintiff

1. HOME-
STEAD:
abandonment
of: what con-
stitutes.

and was not liable to be taken in payment of the debt due to the defendants, at the time it was contracted nor at the time judgment was rendered thereon. The simple question is, did the plaintiff by his removal from the property abandon his homestead rights therein? This is a question of fact and must be determined upon the evidence. The facts as to the removal of plaintiff and his family from the homestead and their residence is not disputed. The removal took place on the 9th day of October 1874, and nothing in the way of household goods was left by plaintiff upon the premises except a few articles of no particular value, and such as a family removing permanently would be as likely to leave behind as to take with them. The removal was made to East Des Moines, where the family remained one year. Then they removed to West Des Moines where they resided for two years, at the end of which time they removed to Indianola, where they continued to reside until the time of the trial in the court below. The plaintiff's occupation is that of a teacher, and some time before he removed his family from that place he was in charge of the public schools at Adel, but for two years before he removed his family from that place he was in charge of the public schools at East Des Moines and connected with the normal school at that place. In the year 1875 the plaintiff returned to Adel and had charge of the public schools at that place. His family which consisted of his wife and four children remained at Des Moines. In 1876 he was engaged as principal of the public schools at Stuart and the family remained at Des Moines. From that time until the time of the trial he was engaged as principal of the schools at Indianola, where he and his family resided. At the time of the trial the plaintiff had made arrangements to remove to Chariton and was endeavoring to secure a house in which to reside.

As we understand the record, during all this period from

October 1874 to August 1880, the plaintiff and family were residents of Des Moines and Indianola, not as boarders or transient persons, but as householders, and the plaintiff remained with his family except while engaged in his profession elsewhere. And, until the property was sold on the execution of the defendants, pending this action, it was leased by the plaintiff to tenants. After the plaintiff left the property he made no substantial improvements upon it. Here then is absence of occupation of the homestead for a period of more than five years, and an actual residence elsewhere during that time. It may be conceded that, if this residence elsewhere was merely temporary and there was a definite and fixed purpose upon the part of the plaintiff to return and once more occupy the property as a home, the lapse of time would not amount to an abandonment, but we have searched this record through and through and we find no evidence whatever of a definite and fixed purpose to return. It is true the plaintiff states, when asked what his intentions were at the time he left the premises and up to the time of the trial as to its occupancy as a homestead, as follows: "My intention was to still retain this property as a homestead until I could exchange it for another." He further stated that he never had abandoned his claim to a homestead in the property in dispute, and never had an intention of doing so. This may all be true and still it fails to show the fixed purpose to return to and abide in the homestead, which the law requires. ·

On the other hand as showing that the plaintiff regarded his removal as something other than merely temporary, it appears that he voted at all the elections held in Indianola while he resided there, except at an election for an appropriation for a jail. He further testifies as follows: "I have offered to sell the premises in dispute at different times, and if I sold I expected to get another home some place where I could find business. I never was able to sell; the lien of S. Hamil & Co., had something to do with my not being able to find a purchaser. I have never been able to find a purchaser at what I considered a fair price."

We are clearly of the opinion that this was an abandonment of the homestead. Neither the plaintiff nor his wife, so far as has been shown, had any definite purpose to return and occupy the property as a home. It is true, it was not intended to abandon the claim to a homestead. The intention was, as stated by the plaintiff, to retain the property as a homestead until he could exchange it for another. But the intention to return and occupy it as a home is quite another thing.

Counsel for appellee urge that when the claimant is in the actual occupancy of the homestead at the time the lien or liability is created, the homestead right cannot be lost by abandonment except by proof of the acquisition of a new homestead.

This is not the law of this State. This court has repeatedly held that a party may abandon his homestead and lose his right thereto, and no such qualification of the rule has ever been recognized. It is true it has been held, as in *Davis v. Kelley*, 14 Iowa, 525, that stronger proof is required of an intention to abandon the homestead when the lien attached or debt was contracted during its actual occupancy, than when the claimant is not in the actual possession. But considering all this and applying all the facts of this case to that rule, we can scarcely conceive of a more complete abandonment short of a sale and conveyance of the property than is shown in this case.

It is said in *Fyffe v. Beers*, 18, Iowa 4, that an actual removal from the homestead with no intention to return will forfeit the homestead right though no new homestead be acquired. That case turned upon the fixed purpose and intention to return. In the case at bar, the removal was actual and long continued; the plaintiff offered it for sale, and repeatedly exercised the right of suffrage elsewhere, and no definite purpose or intention to return is shown. Of course each case must be determined upon its own facts, and as the facts in no two cases are exactly alike, we can be aided but little by precedent.

We are united in the opinion that the facts in this case show an abandonment, and the decree of the Circuit Court will be

REVERSED.