## WOLF *v.* HAWKINS.

### Opinion delivered February 16, 1895.

*Homestead—Abandonment.*

> One who leaves his homestead in the country, and moves his family and household utensils to a house purchased by him in a town, with the intention of engaging in business, thereby raises a presumption of abandonment of the rural homestead, which is not rebutted by proof of his intention to return to it if he should quit the business.

Appeal from Scott Circuit Court.

EDGAR E. BRYANT, Judge.

#### STATEMENT BY THE COURT.

The appellants, Henry H. Wolf & Co., recovered a judgment in the Scott circuit court against A. D. Hawkins.

Hawkins filed a schedule claiming eighty acres of land, with improvements thereon, as his homestead, and the clerk of the court thereupon issued a supersedeas forbidding the sale of said land. A motion to quash the supersedeas was filed by Wolf & Co. The only evidence bearing directly on the question of whether the land was a homestead was the testimony of Hawkins himself. He testified that the place was his homestead; that about two years previous he had moved away from the place to the town of Boles, distant four or five miles. The only article of household furniture he did not take with him was a "homemade bedstead." He left some hogs running on the place. The remainder of his farm stock he sold. At the time he moved away he mortgaged the place to secure the price of a stock of goods he had purchased. During the time he was at Boles he rented the place, reserving two acres of meadow and a little house in which to put the hay from the meadow.

He purchased a dwelling house at Boles, in which he and his family lived, and he entered the mercantile business there.   He lived there for about two years, until after the judgment of appellant was rendered against him.   About the time this action was commenced against him, he sold his house at Boles, and, after the judgment was rendered, he returned to the place in controversy, and claimed it as his homestead.   He further testified that he had never relinquished his claim to the place as a homestead.   "When I left to go merchandizing at Boles," he said, "I did not know what might happen—whether I would go back or not.   I never have abandoned it as a homestead.   I intended to retain it, and go back to it if I should quit business."   The court found that the place was a homestead, and overruled the motion to quash.

*Daniel Hon* for appellant.

This case does not fall within the rule in 55 Ark. 55.   The intention to return did not exist in this case. *His intention depended upon a contingency.*   67 Ala. 558 ; 59 Ia. 638 ; 75 Mo. 559 ; 61 Tex. 654.

RIDDICK, J., (after stating the facts).   The question before us is whether Hawkins, at the time he moved to the town of Boles, abandoned his homestead in the country.   The homestead is said to be "the house and appurtenant land and buildings owned by the head of the family and occupied by him and his family."   Webster's International Dictionary.   If the head of a family owns two separate tracts of land with dwellings thereon, it is reasonable to presume that the one at which he and his family dwell is the homestead.   When the owner of a homestead purchases another dwelling, apart from the old homestead, to which he removes his family, with his household furniture and utensils of all kinds, and there resides for a considerable time, the natural presumption,

in the absence of opposing evidence, is that he has abandoned the old homestead, and acquired a new one. If he wishes to rebut this presumption, and show to the contrary, the burden is upon him to do so. He may do this by evidence showing that he left with the intention of returning, and that the absence of himself and family was not intended to be permanent. As the owner of a homestead has the right to leave it, move his home elsewhere, and acquire a new homestead, whether he has done so in any given case is a question depending to a considerable extent upon his intentions, and to be determined from all the facts and circumstances in proof.

In this case, Hawkins not only left his home in the country, and moved his family and household furniture and utensils to a residence he had purchased in town, mortgaged and rented his former homestead, sold most of his farm stock, and entered the mercantile business, but he does not directly testify that he intended to return. He states that, at the time he left the place in controversy, and took up his residence at Boles, he did not know whether he would return or not. He intended, he said, "to retain the place, and return to it if he quit business." We do not think that this is sufficient to rebut the presumption of abandonment which arises from his having moved his family and household utensils to a new building acquired by him apart from the old homestead. His intention to retain the ownership of the place is not inconsistent with the abandonment of it as a homestead, and the intention to return "if he quit business" does not evince an actual or present intention to return, for there is nothing to show that he intended to quit business. "The purpose to return was on a contingency which might never happen. It was therefore an abandonment for the present, with a possibility of a future change of purpose." *Lehman* v. *Bryan*, 67 Ala. 558; *Kimball* v. *Wilson*, 59 Iowa, 638; *Smith* v. *Bunn*, 75 Mo. 559.

It is true that Hawkins testified that he never abandoned his homestead, but whether he abandoned it or not is a question of mixed law and fact. As his testimony does not show an intention to return at the time he left, his statement that he never abandoned it amounts to little more than his opinion on the question of law involved.

Our conclusion is not in conflict with the case of *Robinson* v. *Swearingen*, 55 Ark. 55. In that case the family of the debtor consisted of himself and wife only ; and although he rented his homestead in the country, and moved to town, yet he reserved a room at his country place, with the furniture therein, for the use of himself and wife whenever they visited the farm. This tended to corroborate his statement that he intended to return. In the opinion in that case the court said that "there was never an intention to change his residence, but a fixed and unqualified intention to preserve it." The evidence does not show that in this case.

Where the evidence is conflicting, the finding of the circuit court on the facts is binding upon this court; but where the facts are not disputed, the question is one of law. From Hawkins' own testimony, we believe that he had abandoned the country place as a homestead, and, not having returned to it before the judgment was rendered, the judgment lien attached. We therefore conclude that the motion to quash the supersedeas should have been sustained.

The judgment of the circuit court is reversed, with an order to quash the supersedeas.