# CARTER v. PICKETT.

No. 2866.  Opinion Filed August 6, 1913.

(134 Pac. 440.)

1.  **HOMESTEAD—Abandonment.** Upon the issue whether or not a homestead has been abandoned, the main question is that of the real intent of the homestead claimant, and its determination involves a question of fact.

2.  **SAME—Intent to Return.** Temporary absence from the homestead does not constitute an abandonment thereof, where there exists at the time a definite and fixed intention to return.

3.  **SAME—Permanent Removal.** Permanent removal from the state constitutes an abandonment of the homestead.

4.  **SAME.** Where the removal from the homestead is unaccompanied by a present intention, existing at the time of the removal, to return thereto, but instead by a mere probable future purpose to so do, dependent on a contingency which might never happen, the homestead exemption is thereby abandoned.

5.  **SAME—Intent to Return.** The intention to return, by which the homestead rights are preserved, must be formed at the time the removal occurs. It can have no influence whatever in restoring the right, once lost by actual abandonment, until executed by a resumption of the occupancy that formerly characterized it as a homestead.

6.  **SAME.** Proof of the abandonment of a homestead must be clear and convincing in its nature. But where the only evidence of consequence is that of the homestead claimant herself, and shows a removal from the state, without any fixed and definite intention to return, a finding by the trial court that the homestead was abandoned will not be disturbed on appeal.

(Syllabus by Sharp, C.)

*Error from District Court, Jefferson County;*
*Frank M. Bailey, Judge.*

Petition of Mrs. B. A. Carter against C. J. Pickett, administrator of P. D. Carter, to set aside the homestead. Judgment for defendant, and plaintiff brings error. Affirmed.

*Thomas W. Robertson* and *Charles A. McBrian,* for plaintiff in error.

*Jones & Green,* for defendant in error.

Opinion by SHARP, C. Assuming, as contended for by plaintiff in error, that the eight lots in the town of Ryan constituted, during his lifetime, the homestead of the husband of plaintiff in error, and that at his death said homestead passed to the plaintiff in error, as his surviving wife, as was held in *Holmes v. Holmes et al.,* 27 Okla. 140, 111 Pac. 220, 30 L. R. A. (N. S.) 920, has the plaintiff in error by her subsequent acts abandoned her right to said lots as a homestead? This is the single question necessary to be determined in this case. The question of abandonment is one of fact. Thompson on Homestead and Exemptions, sec. 265; Waples on Homestead and Exemptions, p. 579; *Cline et al. v. Upton,* 56 Tex. 319; *Bowman v. Watson,* 66 Tex. 295, 1 S. W. 273.

Plaintiff's husband died on May 3, 1910, in the state of Arkansas, though at the time a resident of Jefferson county, Okla. His remains, accompanied by his wife, were taken to his former home in Louisiana for burial. Some time thereafter, the exact date of which does not appear, an order of the county court of Jefferson county was made, setting aside to the surviving wife certain personal property, consisting of a span of horses, household effects, and some grain. This property was then shipped to Louisiana by plaintiff. Letters of administration were taken out on the estate of P. D. Carter on the 26th day of May, 1910, and on the 1st day of November following, while residing in Webster parish, La., plaintiff caused to be prepared and signed a petition to set apart the lots in the town of Ryan as her homestead. Plaintiff's deposition, for use at the hearing in the county court, was taken at Mindon, La., on December 17, 1910. At the trial in the district court she was present in person, and gave the only testimony of consequence touching her rights in the premises. This testimony in part is as follows:

"Q. Since the death of Mr. Carter where have you been staying? A. In Louisiana, with my brother. Q. You have no children. A. No, sir. Q. I understand all your relatives live in Louisiana. A. Yes, sir. Q. When you came back here didn't you wind up all your affairs? A. No, sir; I tried to. Q. Such matters as were set aside by the court you attended to, and took the property to Louisiana, did you not? A. Yes, sir. Q. Haven't

you been back since? A. No, sir. Q. At the time you left did you have any idea of returning here, providing you got your business attended to? · A. I thought I might. Q. When you left you took everything and moved there to live with your brother? A. Yes, sir; I expected to stay there with them; I didn't see what else I could do. Q. Did you attend his funeral in Louisiana? A. Yes, sir. Q. And came from there and shipped everything back? A. The horses and grain and other things. Q. Wasn't it your intention to make that your home? A. Yes, sir; that was to be my home, but I wanted this property to support me."

On the second day of the trial, being recalled as a witness, Mrs. Carter gave testimony tending to show that she had intended to move back to Oklahoma, providing the court would set apart to her as a homestead the lots in controversy. Taken as a whole, the testimony is far from satisfactory, and her contradictory statements difficult to reconcile. That plaintiff moved from Oklahoma to Louisiana, with the intention of making it her home, we have little doubt. Not only by her words, but by her contemporaneous acts, are we to judge of the facts. By section 3344, Rev. Laws 1910, nonresidents of this state are not entitled to a homestead in the state. If, therefore, plaintiff was no longer a resident of Oklahoma, but had acquired a permanent residence in the state of Louisiana, she could not successfully urge her rights to a homestead in this state. Waples on Homestead and Exemptions, p. 560. A mere temporary absence from the state, even though prolonged, for health, business, or pleasure, or perhaps for the purpose of education, will not ordinarily be sufficient to defeat the right to a homestead within the state. Nor will the temporary renting of the homestead of itself tend to change its character. Williams' Ann. Const. Okla., art. 12, sec. 1. It was the act of removing from the state, unaccompanied by any definite, fixed and continuing purpose to return, that constituted the act of abandonment. *Perkins v. Cissel et al.*, 32 Okla. 827, 124 Pac. 7; *Fyffe v. Beers*, 18 Iowa, 4, 85 Am. Dec. 577; *Cotton v. Hamil & Co.*, 58 Iowa, 594, 12 N. W. 607; *Kimball v. Wilson*, 59 Iowa, 638, 13 N. W. 748; *Vittengl v. Vittengl et al.* (Iowa) 135 N. W. 63.

Where there is no present intention to return existing at the time of removal, but a mere possible, or at most probable future purpose, contingent upon the happening or not happening of a particular event, a removal from the homestead constitutes an abandonment thereof. *Wolf v. Hawkins,* 60 Ark. 262, 29 S. W. 892; *Lehman v. Bryan,* 67 Ala. 558; *Conway v. Nichols,* 106 Iowa, 358, 76 N. W. 681, 68 Am. St. Rep. 311; *Bennett et al. v. Dempsey,* 94 Miss. 406, 48 South. 901, 136 Am. St. Rep. 584; *Smith v. Bunn,* 75 Mo. 559. No effort to assert her rights to a homestead was made by plaintiff until November 1, 1910, and her testimony of a conditional intent to return was based upon the court's action thereon. In other words, it was not a present intent existing at the time of removal, but the assertion, for the first time, of a purpose to return after the administrator had taken possession of the property of the estate, and, as the evidence fairly tends to prove, had paid taxes thereon. As was said in *Lehman et al. v. Bryan, supra*:

"It was therefore an abandonment for the present, with the possibility of a future change in purpose. The *animus revertendi* was not a present intention existing at the time of the removal, but a mere possible, or at most probable, future purpose."

The intention to return, by which the homestead rights are preserved, must be formed at the time the removal occurs. It can have no influence whatever in restoring the right once lost by actual abandonment, until executed by a resumption of the occupancy that once characterized it as a homestead. Thompson on Homesteads and Exemptions, sec. 267.

It is almost universally recognized by the courts that homestead and exemption laws should be liberally construed. In harmony with this rule of construction, proof of an abandonment of a homestead must be clear and convincing. Absence therefrom, or from the community or state, of itself is not sufficient to defeat the beneficent purposes of both our organic law and legislative enactments. But when the only evidence of importance, given in support of a petition to set apart a homestead, is that of the person asserting the homestead right, we can only give to such evidence the consideration and weight to which

it is fairly entitled, and where that evidence contains admissions against interest, or where it tends fairly to show an abandonment, courts are given no alternative other than to so find and declare the law. *Wolf v. Hawkins, supra.* Numerous admissions, made by the witness concerning her abandonment, were before the court, and are nowhere satisfactorily explained. Of the weight to be given to the testimony adduced, the trial court was in a better position to judge than are we. He saw and heard the witnesses, saw and observed their demeanor while on the witness stand, and had an opportunity to weigh and consider the testimony not possessed by an appellate court; and, there being evidence of an abandonment, from the mouth of the claimant herself, we have no disposition to disturb the court's finding.

The judgment of the trial court should be affirmed.

By the Court: It is so ordered.