**MATHEWS et al. v. SNIGGS et al.**

No. 8237—Opinion Filed July 1, 1919.

(Syllabus by the Court.)

**1. Pleading — Counterclaim or Cross-Petition—Requisites.**

A counterclaim or cross-petition must be pleaded as fully and distinctly, and with the same substantial requisites, as an original cause of action; it must be sufficient within itself without recourse to other parts of the pleading, or other pleadings, unless by express reference. It should be separately stated, and must show with certainty the character of the claim, how it accrued, and the facts making it a proper subject of counterclaim or cross-petition.

**2. Set-Off and Counterclaim—Extent of Remedy—Counterclaim.**

A counterclaim secures to the defendant full relief, which a separate action at law or a bill in chancery or a cross-bill would have secured to him on an allegation and proof of the facts; but it relates to only such causes of action as exist against the plaintiff, and might, in their nature, be the basis of an action against him at the suit of the defendant.

**3. Action—Distinction Between Law and Equity—Abolishment—Scope of Statute.**

While section 4650, Rev. Laws 1910, abolishes the distinctions between actions at law and suits in equity, and the forms of all such actions and suits, the essential and inherent principles of legal and equitable rights and legal and equitable remedies remain as before; the Code provision not being intended to produce any alteration of, nor direct effect upon, the primary rights, duties, and liabilities of persons created or recognized either in law or equity.

**4. Jury—Right to Jury Trial—Constitutional Guaranty.**

The right of trial by jury, declared inviolate by section 19, art. 2, Const., except as modified in the Constitution itself, means the right as it existed in the territory at the time of the adoption of the Constitution.

**5. Same—Equity Cases.**

The constitutional guaranty that "the right of trial by jury shall be and remain inviolate" has no reference to the trial of issues of fact in equity cases.

**6. Action—Determination of Nature.**

The character of an action is to be determined by the nature of the issues made by

the pleadings and the rights and remedies of the parties, and not alone by the form in which the action is brought or by the prayer for relief, which, in this respect, forms no material part of the pleading.

### 7. Jury—Jury Trial—Refusal in Equity Case.

Plaintiffs brought an action based in part upon a claim of equitable title to lands, the effect of which, if sustained, would have been to restore to one of them the title which she had theretofore conveyed to one of the defendants. The defendants answered setting up legal title acquired by such deed, which they asked to have quieted both against the claim of equitable title of the plaintiff and against a lease made by her, as well as against a further claim of right to temporary occupancy of the premises under an order of the county court in an administration proceeding, made after the execution and delivery of the deed, but without notice to them. Upon call of the case for trial, plaintiffs amended the prayer of their first cause of action, and demanded a jury trial upon all of the issues. This the court denied, and proceeded to hear the case upon defendants' cross-petition and upon plaintiffs' first cause of action, reserving, for the time, plaintiffs' right to a jury trial upon such issues of fact, if any, as should remain after the equitable issues were disposed of. Held, that as the issues tried were equitable, and the relief granted such as only a court of equity could render, the court did not err in refusing a jury trial upon such issues, even though the trial before the court effectually disposed of the entire case.

### 8. Same—Counterclaim.

The defendants being in possession of the land in controversy, and having the right to bring a suit in equity against plaintiffs to quiet their title, could, when sued, by counterclaim, under sections 4745, 4746, Rev. Laws 1910, avail themselves of such right, to all intents and purposes and subject to the same rights respecting trial by the court as if their action had first been brought and they were plaintiffs instead of defendants.

### 9. Same.

The rule announced in the foregoing paragraph is otherwise where the answer sets up an equitable defense for the sole purpose of defeating plaintiffs' recovery, and in which no affirmative relief by cross-petition is asked.

### 10. Quieting Title—Right of Action to Remove Cloud.

Where the surviving wife and minor children, by removal from the state, abandon the homestead of the family, which upon the death of the husband and father they would have had the right to "continue to possess and occupy," under section 6328, Rev. Laws 1910, an order of the county court, made on hearing of the final report of the administratrix (the surviving wife), without notice to a prior purchaser of the surviving wife's portion of the lands, is ineffectual to defeat either the title or right of occupancy of such purchaser or his trustee or grantee, and constitutes a cloud on the title such as a court of equity has power to remove.

### 11. Equity—Jurisdiction—Scope of Relief.

For the purpose of avoiding more than one suit, and in order that a full, effectual, and final decree adjusting the right and equities of all parties in interest may be entered and enforced, a court of equity, once having rightfully assumed jurisdiction of a cause on any equitable ground, will retain such jurisdiction for the purpose of administering complete relief in the determination of the entire subject-matter of the action.

### 12. Pleading — Amendment at Trial — Statute.

Amendment of pleadings in furtherance of justice may be allowed during the trial, when such amendments do not substantially change the "claim or defense." Section 4790, Rev. Laws 1910.

Kane and Rainey, JJ., dissenting.

Error from District Court, Payne County: R. W. Higgins, Assigned Judge.

Action by Lorena Mathews and James L. Mathews, a minor, by his guardian, M. F. Edwards, against Anna M. Sniggs and others, Judgment for defendants, and plaintiffs bring error. Affirmed.

Robert A. Lowry, Chester H. Lowry, Giddings & Lillard, and T. Emmett Buckley, for plaintiffs in error.

Lydick & Lydick, J. M. Springer, Stuart, Cruce & Cruce, Shartel, Dudley & Shartel, and John E. Luttrell, for defendants in error.

SHARP, J. This case presents error from the district court of Payne county, and involves the title to a one-third interest in, and the right of Lorena Mathews and James L. Mathews to the possession of 100 acres of land. During his lifetime the land was owned and occupied by Lawrence E. Mathews, husband of Lorena Mathews and father of Fannie and James L. Mathews. Mathews died in Payne county in December, 1908, leaving as heirs his wife and the children named. Some time after the death of Mathews, his wife and a negro were arrested, charged with his murder. Lorena Mathews employed Moman Pruiett to defend her of the criminal charge, and executed and delivered to him one promissory note for $3,100 and another for $1,000, which second note was delivered to Pruiett for Robert A. Lowry, theretofore employed by Lorena Mathews as her attorney. To secure the payment of the note first mentioned, Lorena Mathews gave to Pruiett a real estate mortgage on her one-

third interest in the land. Afterward, and on the 12th day of April, 1913, Lorena executed and delivered to Anna M. Sniggs a warranty deed to her undivided one-third interest in the land.

It is the circumstances connected with the making of this deed that furnish principally the subject-matter of the suit. Plaintiffs contend that the deed was given to enable defendant Sniggs to qualify as a surety on the bond of Lorena Mathews. On the other hand, the defendants contend that after entering into the original contract of employment arrangements were made whereby Ben F. Williams was to succeed Lowry, and that he and Pruiett were to have charge of the defense, and that thereupon a new fee contract was entered into whereby the attorneys named were to accept for their services the one-third interest of Lorena Mathews in the land, and that it was in fulfillment of this agreement that the warranty deed was made. Furthermore, that the original contract of employment having been, by mutual agreement of the parties, changed in the respect named, Pruiett afterward released of record the mortgage given him and returned the notes to the maker. The deed was made to Anna M. Sniggs, sister-in-law of Pruiett, and intended for the use and benefit of Pruiett and Williams. On the same date of the Lorena Mathews deed, her daughter, Fannie, at the time a minor, by agreement with her mother, executed to Anna M. Sniggs a warranty deed to her undivided one-third interest in the land. Anna M. Sniggs subsequently signed the appearance bond of Lorena Mathews, and the case coming on for trial some time thereafter, she was acquitted of the charge of murder. On May 1st following, Anna M. Sniggs conveyed the two-thirds interest in the land by warranty deed to Pruiett and Williams, who, on the 1st day of July following, conveyed the same by warranty deed to W. I. Ritchey, husband of Fannie (Mathews) Ritchey, who contemporaneously therewith executed a mortgage in favor of Pruiett and Williams in the sum of $6,500. On the same day W. I. Ritchey conveyed the land by warranty deed to J. A. Ritchey, who was at the time of the trial the holder of the legal title. At the time of the institution of the suit, and for some time prior thereto, J. A. Ritchey, through his tenant, Geo. Mitchell, was in possession of the premises. In the suit brought by Lorena Mathews and James L. Mathews it was charged that at the time of the death of Lawrence E. Mathews the land in question constituted the homestead of himself and family; and at the time of making the deed to Anna M. Sniggs it was verbally agreed by Pruiett, acting as the agent of Anna M.

Sniggs, that when the liability of the latter upon the appearance bond was terminated she would reconvey the premises to plaintiff Lorena Mathews; that the several transfers of the property, beginning with the deed made by Anna M. Sniggs, were the result of a fraudulent conspiracy entered into by Pruiett and Williams for the purpose of defrauding both Lorena Mathews and her daughter, Fannie (Mathews) Ritchey, of their title and right of possession to the land; and that the several grantees therein acquired their deeds with full notice of the rights of Lorena Mathews. Plaintiffs further charged, in effect, that neither Anna M. Sniggs nor any person claiming through her had any present interest in the lands, and that the several deeds and instruments affecting the title thereto, other than the mortgage to Pruiett, should be canceled and set aside. A second and third cause of action were based upon an order of the county court of Payne county of November 3, 1913, decreeing distribution of the land, together with an order setting the same apart as the homestead of the surviving wife and minor children. At the trial plaintiffs filed an amendment to their original petition, and in lieu of equitable relief asked that they be given the immediate possession of the premises. The unamended portion of the prayer of the original petition asked for the eviction of the defendants from the premises, and that they be let into possession thereof, and for an accounting and for all other and further necessary relief.

Defendants Sniggs, Pruiett, Williams, and W. I. Ritchey filed their joint answer, and the defendant J. A. Ritchey his separate answer, to the petition. The joint answer of Sniggs and others sets up title in trust of the former, her conveyance to Pruiett and Williams, and the several subsequent conveyances and instruments already mentioned, including the outstanding unsatisfied mortgage of W. I. Ritchey to Pruiett and Williams. J. A. Ritchey pleaded ownership of the premises, subject to the latter mortgage, claimed to be an innocent purchaser, and set up other defenses not here necessary to consider. At the conclusion of the answers, and as part of the same pleadings, defendants filed their cross-petitions, in which, after setting up at length the claims being asserted by the plaintiffs, they asked to have their respective titles and interests in the premises quieted, and that plaintiffs be forever enjoined from claiming or asserting any right or interest therein. At the trial, by permission of court, the cross-petitions were amended so as to make particular reference to the decree of the county court of November 3, 1913, and to a lease of the premises made on November 5, 1913, by plaintiffs

to one Geo. M. King. This order of the county court and the lease they specifically asked to have canceled as a cloud on their title.

The case coming on for trial, plaintiffs demanded a jury trial. This the court at the time refused, advising counsel that he would first proceed to hear and dispose of the equitable issues arising upon plaintiffs' first cause of action and the cross-petitions of the defendants. At the conclusion of the trial, both plaintiffs and defendants requested the court to file written findings of fact and conclusions of law, which request was granted. Among other things, it was found that the deed of April 12, 1913, was intended to be, and was in fact, a conveyance in fee simple of all of the title and rights of Lorena Mathews, and was not intended as a conveyance to enable Anna M. Sniggs to qualify as surety on the appearance bond, nor to insure the attendance of the former at the trial; that the several subsequent conveyances were made between the defendants as claimed by them, and that there was then due to Pruiett and Williams a balance of $5,-362.25, with interest; and that prior to the making of the deed on the 12th day of April, 1913, Lorena Mathews, together with her two minor children, had abandoned the premises as a homestead "and had taken up their residence in the Dominion of Canada, outside the United States, without any intention of returning thereto." The decree quieted the title to the land in J. A. Ritchey as against the claim of title and right of occupancy of the plaintiffs, ordered the King lease canceled, and foreclosed the mortgage of Pruiett and Williams against J. A. Ritchey. From the decree no appeal has been prosecuted by King, and consequently he has passed out of the case. At no time has Fannie (Mathews) or Ritchey complained on account of the deed made by her to Anna M. Sniggs.

The only errors urged in this court deserving of consideration involve the action of the trial court in not submitting the case to a jury, in permitting defendants to amend their cross-petitions during the trial, and in not giving effect to the order of the county court of November 3, 1913, and awarding possession of the premises to plaintiffs on account thereof.

On the part of plaintiffs in error it is contended that their action, being, as claimed by them, in ejectment, plaintiffs were, as a matter of right, entitled to a jury trial under section 4993, Rev. Laws, 1910, providing that—

"Issues of fact arising in actions for the recovery of money or of specific real or personal property, shall be tried by a jury, unless a jury is waived, or a reference be ordered."

The contention overlooks entirely, not only the nature of the rights asserted in plaintiffs' first cause of action, but of the issues joined and remedy invoked by defendants' cross-petitions. Admittedly plaintiffs had, under their first cause of action, but an equitable claim to the fee-simple title, as the fact of the making of the warranty deed was not in issue, while the cross-petitions of the defendants, if established, entitled them to equitable relief. The answers did not simply put in issue the averments of the plaintiffs' petition, or affirmatively plead an equitable defense thereto, but by cross-petition set up a cause of action against the plaintiffs which, if proved, entitled them to equitable relief. This the statute authorizes in providing that an answer shall contain a statement of any new matter constituting a defense, counterclaim, or set-off, or a right to relief concerning the subject of the action; and by providing that when such relief is sought the counterclaim or cross-petition shall state the nature of the relief to which the defendant believes himself entitled. Also in providing that the defendant may set forth in his answer as many grounds of defense, counterclaim, set-off, and for relief as he may have, whether they be such as have been heretofore denominated legal or equitable or both. Sections 4745, 4746, Rev. Laws 1910. In such cases the cross-demand must be pleaded as fully and distinctly and with the same substantial requisites of an original cause of action. It must be sufficient in itself without recourse to other parts of the pleading, or to other pleadings, unless by express reference. It should be separately stated, and must show with certainty the character of the claim, how it accrued, and the facts making it a proper subject of counterclaim or cross-petition. Brown v. Massey, 19 Okla. 482, 92 Pac. 246; Allen v. Douglass, 29 Kan. 412; Venable v. Dutch, 37 Kan. 515, 15 Pac. 520, 1 Am. St. Rep. 260; Meeker v. Dalton, 75 Cal. 154, 16 Pac. 764; 15 Cyc. 104; 31 Cyc. 221, 222, 226-228.

The counterclaim or cross-petition stated fully a cause of action, entitling defendants, or at least some of them, to equitable relief. This remedy they could have invoked by an independent suit, had they chosen to institute such a suit prior to the commencement of the plaintiffs' action. The cross-petition constituted, for the time being, their cause of action against the plaintiffs, and in which they were the actors or moving parties. A sufficient test in such cases is met when the averments of the cross-petition, taken by themselves, if admitted, entitle the defendants to a judgment in their favor against

the plaintiffs. But it is said, in effect, that the distinctions between actions at law and suits in equity, and the forms of all such actions and suits, are abolished (section 4650, Rev. Laws 1910), and as the defendants are permitted to set forth in their answer any grounds of defense, whether legal or equitable or both, that plaintiffs, being entitled to a jury trial on their petition, could not be deprived thereof by the action of the defendants. We have just seen that the defense interposed was more than a mere purpose to defeat a recovery by plaintiffs; that it contained not only defensive but affirmative matter, entitling the defendants, when established, to equitable relief over and against the plaintiffs. It should be remembered, too, plaintiffs' first cause of action was based on an equitable title, and asked for the cancellation of the Sniggs deed and the instruments subsequently executed between the several defendants. While the amended prayer did not ask for equitable relief, the petition remained essentially the same as before amendment. Originally it was sufficient, in an action for the recovery of real property, for the plaintiff to state in his petition that he had either a legal or equitable estate therein, and was entitled to the possession of the premises in question. Stat. 1893, section 4492; Rev. & Ann. Stats. 1903, sec. 4788; Compiled Laws 1909, sec. 6122. But the provisions in respect to the character of estate necessary in an action to recover real property appear to have been omitted in the Revised Laws of 1910, in force at the time of the institution of the present action. While section 4491, Statutes of 1893, was amended by the act of January 25, 1911 (Session Laws 1910-11, pp. 25, 26), it is not clear that the amendment in any way affected section 4492. However, as the question of plaintiffs' right to base their action upon alleged equitable title, where plaintiffs had been in the prior possession, was not raised by defendants in the trial court, and is not considered by them in this court, we shall treat the petition as sufficient to state a cause of action the ultimate purpose of which was the recovery of land.

Some confusion may be found in the earlier reported cases as to the effect of statutes, many of which are similar to section 4650, Rev. Laws 1910, abolishing the distinctions between actions at law and suits in equity, but it is now well established that the adoption of the Code was not intended to produce any alteration of, nor direct effect upon, the primary rights, duties, and liabilities of persons created by either department of the municipal law. Olson v. Thompson, 6 Okla. 576, 52 Pac. 388; Casey v. Mason, 8 Okla. 665, 59 Pac. 252; Lattin v. McCarty, 41 N.

Y. 107; Gould v. Cayuga Nat. Bank, 86 N. Y. 75, 83; Klonne v. Bradstreet, 7 Ohio St. 323; Claussen v. Lafrenz, 4 G. Green (Iowa) 224; Meyers v. Field, 37 Mo. 434, 441; Bonesteel v. Bonesteel, 28 Wis. 245; Kollock v. Scribner, 98 Wis. 104, 73 N. W. 776; De Witt v. Hays, 2 Cal. 463, 56 Am. Dec. 352; Matlock v. Todd, 25 Ind. 128; Hill v. Barrett, 14 B. Mon. (Ky.) 83. Whatever may have been the nature and extent of these primary rights and duties, from whatever causes, facts, acts, or omissions they took their rise, whether they were denominated legal or equitable, they remain the same as before. The principles by which the courts determine the primary rights and duties of litigant parties remain unaltered; upon the acts or omissions which were the occasion of a right called equitable the same right is still based, and is still properly termed equitable; from the acts or omissions which were the occasion of a right called legal the same right still arises, and is still with propriety termed legal. Under the Code procedure primary rights and duties remain unchanged; the delicts or wrongs which are the violations of these rights and duties are still committed in the same manner as before; and as these primary rights and duties, and the wrongs which violate them, constitute the causes of action over which the courts exercise their remedial jurisdiction, it is plain that no statute relating solely to procedure can increase, diminish, or modify the causes of action which exist independently of procedure. Pomeroy, Code Rem. sec. 8. The doctrine thus uniformly established in reference to the effect of the reform legislation upon primary rights and duties and causes of action is also as clearly settled in reference to its effect upon remedies and remedial rights, when the term is used, as it properly should be, to denote the reliefs which are conferred upon the parties, and not the means of procuring these reliefs. The general and sweeping language so often quoted abolishes the distinction between actions at law and suits in equity; and other provisions and clauses recognize all the forms of judgment known to the common-law courts, namely, for payment of money, for the possession of land and of chattels, and also the specific kinds of relief which courts of equity embodied in their decrees.

Strictly speaking, the remedy given is no part of the action, but is the result thereof. It is the object for which the action is prosecuted—the end at which all the litigation is directed. A modification of the action, a change in its forms, incidents, names, modes of procedure, including the process, the pleadings, the parties, the manner of trial, and all other steps leading up to the judgment, does not involve any alteration in

this result; the general language of the Code does not, therefore, include and apply to. the substance of the judgments, that is, of the remedies. Abolition of the distinctions between legal and equitable actions, and of the forms of legal actions, does not abolish the distinctions between remedies. If, from the nature of the primary right, and of the wrong by which it is invaded, the injured party would, under the old system, have been entitled to an equitable remedy, he is still entitled to the same relief, and it may well be termed equitable; if from the like causes he would have been entitled to a legal remedy, he is still entitled to the same relief, and it may properly be described as legal. Pomeroy's Eq. Jur. secs. 84-88; Pomeroy's Code Rem. secs. 9, 10; Bliss on Code Pleadings, secs. 6-10; Brown v. Kalamazoo Circuit Judge, 75 Mich. 274, 42 N. W. 827, 5 L. R. A. 226, 13 Am. St. Rep. 438.

It having been thus determined that no effect has been wrought upon the primary rights and duties which constitute the great body of the law, nor upon the final remedies granted to the litigant parties, the courts have, with general, though not with absolute. unanimity, agreed upon the interpretation to be given to the provision under consideration. The broad principle of construction may be regarded as established in most, if not all, the states, that the clauses of the statutes abolishing the distinction between actions at law and suits in equity were intended .to mean exactly what they say, without reservation or equivocation. All the differences which belonged to the external machinery by which a judicial controversy was conducted up to the judgment itself, all the rules respecting forms of action, all the peculiar characteristics of a legal or of an equitable action, or of the various kinds of legal actions. except in certain cases the constitutional requirements as to the jury trial, have been swept away. One action, governed in all instances by the same principles as to. form and methods, suffices for the maintaining of all classes of primary rights, and for the pursuit of all kinds of civil remedies. Pomeroy's Code Rem. secs. 8-10; 1 R. C. L. 331, 332.

Pleadings in common-law actions and equity actions were very different. In a common-law action the "issuable facts" only were charged. The plaintiff never narrated the exact transaction between himself and the defendant from which the rights and duties of the parties arose; he stated what he conceived to be the legal effect of these facts. And if in doing so a mistake was made—that is, if the real facts of the transaction, as disclosed by the evidence, did not correspond with this conception of their legal

effect taken by the pleader—the plaintiff might be, and unless permitted to amend would be, turned out of court. On the equity side the facts as they occurred rather than the legal aspect of or conclusions from these facts were set forth, according to the original theory of equitable pleading. In practice this narrative was always accompanied by a demand of evidentiary matter which was supposed to be in the possession of the defendant. This form of pleading was therefore used as a means of obtaining admissions from the defendant, and thus making him a witness in the cause against himself. A bill in equity had, therefore, two entirely distinct uses and offices; it was a narrative of the facts from which plaintiff's rights to relief arose, and it was an instrument for obtaining evidence from the opposite party. Our statute (section 4737, Rev. Laws 1910) now requires that the pleader must set up in ordinary and concise language and without repetition, a statement of the facts constituting his cause of action. This provision applies to all kinds of actions; to one founded upon a legal right and seeking a legal remedy, and to one founded upon an equitable right and seeking an equitable remedy.

real, personal, and mixed. Real actions were those brought for the specific recovery of lands, tenements, or hereditaments; some being founded on the seizure or possession, and some on the property or right. Personal actions were those brought for the specific recovery of goods and chattels, or for damages or other redress for breach of contract or other injury of whatever description; the specific recovery of lands, tenements, and hereditaments only excepted. Of personal actions based upon the violation of a duty imposed by contract were actions on account, covenant, assumpsit, debt, and detinue; and of personal actions based upon the violation of a duty imposed by law independent of contract were trespass and trespass on the case and trover. Mixed actions were such as appertained in some degree to both real and personal actions, and were therefore properly reducible to neither of them; being brought both for the specific recovery of lands, tenements, and hereditaments, and for damages for injury sustained in respect of such property. Where no specific remedy for injury was given, the remedy afforded was known as trespass on the case. Causes of action existing at common law were enforced in common-law courts and. by means of common-law forms of action, whereas causes of action existing in equity were enforced by courts of equity, and by means of equitable forms of action. This the Code has changed, so that with us district courts have jurisdiction both in law and equity

cases, and there is but one form of civil action for the enforcement of both legal and equitable causes of action. All fictions in pleadings are by statute abolished. Section 4767, Rev. Laws 1910. Except as otherwise provided in article 5, Code of Civil Procedure, all actions must now be prosecuted in the name of the real party in interest. There are no feigned issues. Section 4652, Rev. Laws 1910. Other important features of all actions—the union of different causes of action or defense, affirmative relief to the defendant, the forms of judgment—are affected by the general provisions of the statute abolishing the distinctions in legal and equitable methods. But when all is said, the distinctions between the remedy at law and in equity are as broad as ever, and to entitle a plaintiff or defendant, by cross-petition, to the equitable interposition of the court, he must show a proper cause for the interference of a court of chancery. Pomeroy's Code Rem. secs. 68, 69; 1 R. C. L. 331, 332; De Witt v. Hays, 2 Cal. 463, 56 Am. Dec. 352; Fleming v. Lockwood, 36 Mont. 384, 92 Pac. 962, 14 L. R. A. (N. S.) 1628, 122 Am. St. Rep. 375, 13 Ann. Cas. 263; Milwaukee Light, Heat & Tract. Co. v. Ela. Co., 142 Wis. 424, 125 N. W. 903, 27 L. R. A. (N. S.) 567, 20 Ann. Cas. 707.

A suit to quiet title invokes a remedy that is exclusively equitable, and can be administered by courts of equity alone. Such remedy may be granted in order to protect, maintain, or enforce primary rights, estates, or interests which are legal as well as those which are equitable; they are not administered in behalf of equitable substantive rights alone. As illustrations, an injunction may be granted to prevent the invasion of a legal ownership or interest, and a decree quieting title is often rendered to establish an existing legal estate, and the like. Originally, and independent of statute, the jurisdiction of a court of equity to quiet title was only invoked when either many persons asserted titles adverse to the plaintiff, or when one person repeatedly asserted his single title by a succession of legal actions, all of which had failed, and in either case the object of the suit was to settle the whole controversy in one proceeding. This action, however, has been greatly extended by statute, and it is now quite generally provided that one in possession of land, claiming an estate therein as against an adverse claimant out of possession asserting a hostile title or interest thereto, may, without waiting for a proceeding, legal or equitable, to be instituted against him, take the initiative and by commencing an equitable action compel his adversaries to come into court, assert their titles, and have the controversy put at rest

in a single judgment. It is plain, therefore, that this statutory suit is the converse of the legal action of ejectment. Pomeroy's Code Rem. sec. 266.

By the trial of the defendants' cross-petitions and the plaintiffs' first cause of action to the court and without a jury, plaintiffs' constitutional right to a jury trial was not invaded, as it is a well-established rule that a constitutional guaranty, such as ours, that "the right of trial by jury shall be and remain inviolate" (Const. art. 2, sec. 19), has no reference to equity cases, unless they are specially named. Hawthorne v. Panama Park Co., 44 Fla. 194, 32 South. 812, 103 Am. St. Rep. 138; Lynch v. Metropolitan Elec. R. Co., 129 N. Y. 274, 29 N. E. 315, 15 L. R. A. 287, 26 Am. St. Rep. 523; Christensen v. Hollingsworth, 6 Idaho, 87, 53 Pac. 211, 96 Am. St. Rep. 256; Maynard v. Richards, 166 Ill. 466, 46 N. E. 1138, 57 Am. St. Rep. 145; Comingor v. Louisville Trust Co., 128 Ky. 697, 108 S. W. 950, 111 S. W. 681, 129 Am. St. Rep. 322; State ex rel. Rhodes v. Saunders, 66 N. H. 39, 25 Atl. 588, 18 L. R. A. 646; Brady v. Carteret Realty Co., 70 N. J. Eq. 748, 64 Atl. 1078, 8 L. R. A. (N. S.) 866, 118 Am. St. Rep. 778. This right, declared to be inviolate by the Constitution, means only the right as it existed in the territory at the time of the adoption of the Constitution, as held in State ex rel. West. v. Cobb, 24, Okla. 662, 104 Pac. 361, 24 L. R. A. (N. S.) 639; Baker v. Newton, 27 Okla. 436, 112 Pac. 1034; In re Byrd, 31 Okla. 549, 122 Pac. 516; Ex parte Dagley, 35 Okla. 180, 128 Pac. 699, 44 L. R. A. (N. S.) 389; Parker v. Hamilton, 49 Okla. 693, 154 Pac. 65; Hale v. Marshall, 52 Okla. 688, 153 Pac. 167. As the right to trial by jury in equity cases was not recognized and did not exist at the time of the adoption of the state Constitution, plaintiffs' rights were not, on that account, denied.

Nor does it matter what plaintiffs may have termed their action by their application to amend the prayer in part, as its character is to be determined by the rights and remedies of the parties and the nature of the issues properly triable, and not alone by the form in which the action is brought, or by the prayer for relief, which, in this respect at least, forms no material part of the pleading (Anderson v. Muhr, 34 Okla. 184, 128 Pac. 296); and this is the controlling factor in determining whether or not the right of jury trial exists. Brown v. Massey, 19 Okla. 482, 92 Pac. 246; Mills v. Fletcher, 100 Cal. 143, 34 Pac. 637; Union National Bank v. Carr, 49 Iowa, 359; Dunham v. Travis, 25 Utah, 65, 69 Pac. 468; Martin v. Martin, 118 Ind. 228, 20 N. E. 763.

The right to trial by jury in an action at

law in which an equitable defense is interposed depends on whether the effect of such defense is to convert the action into an equitable suit. There is, as heretofore observed, a distinction between an equitable defense set up merely for a strictly defensive purpose and an equitable defense interposed for the purpose of securing affirmative equitable relief. The former does not change the mode of trial in an action at law; the latter, constituting in itself a cause of action, is to be tried in the same manner as if it had been instituted as a separate suit. And so where the defendant's allegations amount to a cross-action or counterclaim, on which, but for the statute authorizing equitable defenses and cross-actions, he would have to maintain a separate suit in equity for affirmative relief, such cross-action is treated like any other suit in equity, and issues arising thereon are triable by the court. 16 R. C. L. 213. In the leading case of Maas v. Dunmyer, 21 Okla. 434, 96 Pac. 591, it was held that in an action for foreclosure, where a defendant against whom no money judgment is sought, by cross-petition in his answer sets up a defense and alleges a cause of action involving the application of equitable doctrines, and seeks relief that only a court of equity can give, such defendant is not entitled to a jury trial on the issues raised by his cross-petition. The opinion cites the case of Fish v. Benson, 71 Cal. 428, 12 Pac. 454. There plaintiff brought an action in ejectment and defendants were entitled to a jury trial, as a matter of right on the issues raised by the allegations of the ejectment petition, but defendants, in addition to a general denial, filed a cross-petition setting up fraud in the procurement of the deed, and prayed that the deed of Benson and his grantees be canceled. Defendants demanded a jury trial upon all of the issues. The court, as in Maas v. Dunmyer, separated the two causes of action and tried the issues presented under the cross-petition as an equitable issue to the court. This action, on appeal, was sustained; the court holding that—

"The cross-complaint states facts which, if true, constitute a cause of action of which a court of equity has jurisdiction, and the relief sought is such as can only be obtained in equity. It was entirely distinct from the action in ejectment, and, if successful, would result in divesting the plaintiffs of their legal title. Being an action cognizable in equity, and distinct from the legal action, it was the duty of the court below to first determine the issues involved under the cross-complaint, for the reason that, if the defendants succeeded in their issues, it would defeat the right of plaintiffs to recover in their action at law, however perfect their legal right."

The case of McCoy v. McCoy, 30 Okla. 379,

121 Pac. 176, Ann. Cas. 1913C, 146, was a suit to declare a resulting trust, and it was very properly held that the subject of trusts and the control and regulation of trust estates were not properly cognizable by courts of law, but were exclusively within the jurisdiction of courts of equity, and that the court did not err in denying the defendant a jury trial as a matter of right. Watson v. Borah, 37 Okla. 357, 132 Pac. 347, was a suit for cancellation of certain deeds of conveyance and a lease, and it was held no grounds for reversal that the court erred in instructing the jury; the case being one in equity, and the jury's findings being advisory only. Barnes v. Lynch, 9 Okla. 156, 191, 59 Pac. 1008; Wat-tah-noh-zhe et al. v. Moore, 36 Okla. 631, 129 Pac. 877; Hogan v. Leeper, 37 Okla. 655, 133 Pac. 190, 47 L. R. A. (N. S.) 475; Oklahoma Trust Co. v. Stein, 39 Okla. 756, 136 Pac. 746; and Crump v. Lanham, 67 Oklahoma, 168 Pac. 43—merely hold that in cases of equitable cognizance the judge may call in a jury, or consent to one, for the purpose of advising him on questions of fact, and may adopt or reject their conclusions as he sees fit, inasmuch as the whole matter must eventually be left to him to determine. Hartsog v. Berry, 45 Okla. 277, 145 Pac. 328, is to the effect that where a party in possession of real estate brings an action to rescind the contract, cancel the deed thereof, and to quiet title, and the defendant's answer is in the nature of ejectment, to which a general denial is filed, the suit is one in equity, and the plaintiff is not entitled, as of right, to a jury trial. In Echols v. Reeburgh, 62 Oklahoma, 161 Pac. 1065, it was held that in an action for foreclosure, where a defendant against whom no money judgment was sought, by cross-petition sets up lack of understanding and incompetency in the making of the note and mortgage, and on that ground seeks affirmative relief in the cancellation of the note and mortgage, such defendant, on the issues treated by his cross-petition, was not entitled to a jury trial. In Childs v. Cook, 68 Oklahoma, 174 Pac. 274, the trial had upon the remand of the case (49 Okla. 321, 152 Pac. 88), involved the setting aside of a sum of money out of the proceeds of a sale of land in lieu of dower, and it was held that plaintiffs were not entitled to a jury trial. In Word v. Nakdimen, 74 Oklahoma, 178 Pac. 257, the execution of the note sued on was admitted. There was no plea of payment (Sherman v. Randolph, 13 Okla. 224, 74 Pac. 102; Brewer v. Martin, 40 Okla. 350, 138 Pac. 166), although, as we infer from the statement of the case, it was in effect contended that the notes were discharged on account of the damages alleged to have been sustained by the makers, due to the

wrongful attachment sued out and levied on the land sold defendants. This was the only issue tried by the court; that portion of plaintiffs' action asking for a cancellation of the deed from Word to his sister, as well as the defendants' claim for damages, being continued for the term. The judgment was reversed for the reason, as stated in the opinion, that the court "has no right to divide the action and try a part and continue a part." It may be the defendants in that case were entitled on their counterclaim to a jury trial, but if they had such right it was not denied them, as the court simply continued the hearing of the remaining issues; though it would appear that execution of the partial judgment should have been withheld until the case was fully disposed of. In so far as Cook v. Childs and Word v. Nakdimen contain expressions in conflict with this opinion, such portions of the opinion are disapproved. It is not meant thereby to cast any doubt upon the correctness of the conclusion reached in the first-named case, though the writer is of the belief that a mistake was made in approving the opinion in Word v. Nakdimen.' In City of Emporia v. Soden, 25 Kan. 588, 37 Am. Rep. 265, the action was in equity, and it was held that neither party had a right to a jury trial. In Woodman v. Davis, 32 Kan. 344, 4 Pac. 262, cited in Maas v. Dunmyer, plaintiff's petition stated five causes of action, the first four of which were in equity, the fifth at law; and it was held that defendant was not entitled, as a matter of right, to a jury in the trial of the equitable cause of action, and that the court committed no error in submitting the fifth cause of action to a jury, and in itself trying the issues in equity. Furthermore, it was said that a jury trial cannot be demanded as a matter of right in suits in equity. Citing earlier opinions of the court. In Morgan v. Field, 35 Kan. 162, 10 Pac. 448, the action was upon a promissory note, and to foreclose a mortgage made to secure its payment. No issue was taken on the execution of the note or on the right of Field to recover thereon. P. J. Morgan claimed title in the land through mesne conveyances from the mortgagor, Dennis Morgan. It was said that under the circumstances defendant was not entitled to a jury trial as a matter of right, there being nothing left in controversy but the right to foreclose the mortgage and subject the property mortgaged to the payment of the amount admitted to be due; that the issues joined between Field and P. J. Morgan being purely equitable in their character, a jury trial could not be demanded as a matter of right. One of the best-considered cases involving the right of a jury trial in an action for the

recovery of real property is Gill v. Pelky, 54 Ohio St. 348, 43 N. E. 991. The action was brought by the plaintiffs under the Code of Civil Procedure of Ohio to recover the possession of land to which they claimed title in fee simple, and which was detained from them by the defendant, who was in possession. The action, as disclosed by the petition, it was said, was one triable of right to a jury. The answer took issue on the averments of the petition, and to that extent it was held was a defense only; but it went further and by cross-petition set forth an equitable cause of action constituting a cross-demand in favor of the defendants, such as might have been set up in an independent equitable cause of action, and the effect of which, if established, would extinguish the plaintiffs cause of action "by destroying their deed and annuling the proceedings of the probate court, inasmuch as either affected the title to the parcel of land in controversy." It was said that if the defendants, instead of setting forth the facts respecting the alleged mistakes in a cross-petition in an action at law, had made them the subject of an independent action for relief, the equitable character of the cause of action would be apparent to every mind at all familiar with the distinctions between legal and equitable rights or causes of action; that—

"In the nature of things a cause of action which, if set forth by the plaintiff in a petition, would be properly denominated equitable, would retain its name and character although set forth by a defendant in an answer as a cross-demand. Its character should depend on the nature of the relief it establishes in favor of the party pleading it, and not upon the relation, as plaintiff or defendant, which the parties bear to each other in the action."

Also that as the character of the action does not depend upon the relation as plaintiff or defendant borne to the action by the parties asserting it, so neither should the mode of trial depend upon such relation. The Ohio statute under consideration is the same as section 4993, Revised Laws, in so far as jury trials are provided for in actions to recover specific real property. The opinion reviews a large number of Ohio decisions, from which the rule is deduced that, while an equitable defense merely will not affect the mode of trial, an equitable cross-demand set forth by defendant in a cross-petition upon which he asks affirmative relief will draw to itself the mode of trial appropriate to such cause of action, as it would do if set forth by the plaintiff in an independent action. In Marling v. Burlington, C. R. & N. Co., 67 Iowa, 331, 25 N. W. 268,

the action was for money judgment for wrongful trespass and injury to real property. The defendant's answer was in the nature of a cross-petition in equity, in which it asked to have its right and title ascertained and quieted against the plaintiff's claim of title in the land. Plaintiff demanded a jury trial, which was denied. The court held that the answer and cross-petition presented an equitable issue, and that it was defendant's right to demand equitable relief and a decree quieting its rights to the land, and that plaintiff was not entitled to a jury trial. In Lincoln Trust Co. v. Nathan et al., 175 Mo. 32, 74 S. W. 1007, plaintiff's action was at law for rent for certain business premises in the city of St. Louis. Defendants filed a cross-petition, asking for the cancellation of their lease. Plaintiff demanded a jury trial, which the court denied, and it was urged on appeal that the utmost effect which the equitable defenses afforded would be to require the court to hear the equitable defenses first and then to proceed with the case at law. The contention was met by the court saying:

"The infirmity underlying this position is that the answer does not simply interpose an equitable defense, but it is a cross-bill in equity, asking affirmative relief, which, if granted, as it was, would cut out the foundations on which the plaintiffs' right to recover depended, and therefore destroy the plaintiffs' case. This accentuates the difference between a mere equitable defense and a cross-bill in equity asking affirmative relief, which, if granted, destroys the plaintiffs' case. This being true, the answer and cross-bill converted this case into one in equity, and a trial by jury was properly denied. Allen v. Logan. 96 Mo. 591, 10 S. W. 149; Swon v. Stevens, 143 Mo. 384, 45 S. W. 270; Dunn v. McCoy. 150 Mo. 548, 52 S. W. 21; Courtney v. Blackwell, 150 Mo. 245, 51 S. W. 668; Martin v. Turnbaugh, 153 Mo. 173, 54 S. W. 515; Beland v. Brewing Association, 157 Mo. 593, 58 S. W. 1; Baldwin v. Dalton, 168 Mo. 20, 67 S. W. 599."

The rule in Indiana is that, whenever the cause of action is one that can only be enforced by invoking the equitable jurisdiction of a court, then the right of trial by jury cannot be demanded, but if the cause of action does not depend on the equitable jurisdiction of the court, then a jury trial may be demanded. Martin v. Martin, 118 Ind. 228, 20 N. E. 763. See, also, Sigel-Campion L. S. Com. Co. v. Haston, 81 Kan. 656, 106 Pac. 1096; Bethany Hosp. Co. v. Phillipi, 82 Kan. 64, 107 Pac. 530, 30 L. R. A. (N. S.) 194; Hockett v. Earl, 89 Kan. 733, 133 Pac. 852; Akins v. Holmes, 89 Kan. 812, 133 Pac. 849; Lestrade v. Barth, 19 Cal. 660. In the case at bar the defendant J. A. Ritchey was in possession of the land and had the legal title

thereto. This title he sought to have quieted against the equities asserted by plaintiff Lorena Mathews on account of the deed to Anna M. Sniggs, and the order of the probate court, made without notice to him or his grantors, and the lease from Lorena Mathews to King. If his title was not vulnerable to the attack made upon it in the plaintiffs' first cause of action, he was entitled to relief, and to such relief as a court of equity alone could give. If the order of the county court made in the administration proceeding was ineffectual as to him or those from whom he deraigned title, he was entitled to have the cloud upon his title removed. If Lorena Mathews had no title or right in the land, or valid claim to the possession thereof, her lease to King was without force, and defendants were entitled to have King made a party to the suit and the lease made to him by Lorena Mathews canceled. This relief, if warranted by the facts, he could have obtained, as could Pruiett and Williams in respect to their outstanding mortgage, in an independent suit in equity. Their respective claims being the proper subject of counterclaim or cross-petition, which in its broadest sense is a cause of action existing in favor of defendants, or some one of them, and against plaintiffs, or some one of them, could as well be set up in the action brought by plaintiffs as in a separate suit. The issues tried by the court on the cross-petition were equitable, and the decree quieting title in defendants was such only as a court of equity could render. The order of the county court of November 3, 1913, on the hearing of the final report of the administratrix, was made without notice to defendants or either of them. Its effect, if allowed to stand, would be to impair, if not destroy, the proprietary rights of the defendants in the land, and which rights had previously attached.

The contention in respect to the order of the county court of November 3, 1913. based upon section 6328, Rev. Laws 1910, falls when it is found that the surviving wife and minor children had abandoned the lands, which under ordinary circumstances they would have had the right to possess and occupy as a homestead. The testimony introduced in the trial court has not been preserved, but the court's findings in respect to the abandonment are that plaintiffs moved from Oklahoma to Edmonton, Canada; that while there plaintiff Lorena Mathews successfully resisted an extradition warrant for her return to Oklahoma to answer the charge of murder. Afterward she removed to the province of Vancouver; from which place she was, on application of the President of the United States, extradited and brought back

to Oklahoma for trial. The specific findings of the trial court in this respect are:

"The court further finds from the evidence in this case that long prior to the 12th day of April, 1913 [the date of her deed to Anna M. Sniggs], the said Lorena Mathews, together with her two minor children, Fannie Mathews and James Mathews, had abandoned the property above described [claimed as her homestead], and had taken up their residence in the Dominion of Canada, outside the United States, without any intention of returning thereto."

Obviously, therefore, the statute authorizing the surviving wife, and perhaps the minor children, to occupy the homestead for the period fixed in the statute has no application; their permanent removal from the state constituting an abandonment of the homestead. Section 3344, Rev. Laws; Carter v Pickett, 39 Okla. 144, 134 Pac. 440. While the question of abandonment was a question of fact, the court, having rightfully assumed jurisdiction of the defendants' counterclaim or cross-petition, had the right to determine all questions of fact properly raised by such cross-petition, as it is a well-recognized rule of equity jurisprudence that whenever a court of equity obtains jurisdiction of an action for any purpose for which it is authorized to render a decree, it will hold such jurisdiction for every purpose, and until a complete determination is had of all issues arising with respect to the subject-matter, and will exercise its power in this regard to prevent a multiplicity of suits. De Roberts v. Cross, 23 Okla. 888, 101 Pac. 1114; Cook v. Warner, 41 Okla. 781, 140 Pac. 424; Success Realty Co. v. Trowbridge, 50 Okla. 402, 150 Pac. 898; Ball v. White, 50 Okla. 429, 150 Pac. 901; Murray v. Speed, 54 Okla. 31, 153 Pac. 181; Guaranteed State Bank v. D'Yarnett, 67 Oklahoma, 169 Pac. 639; Phillips v. Mitchell, 68 Oklahoma, 172 Pac. 85.

The court did not err in permitting the defendants to amend their cross-petition during the trial, unless it was in the cancellation of the lease to Geo. M. King, who had not prior thereto been a party to the proceedings. As King is not complaining of the decree, not being a party to the proceedings in error in this court, that question is not before us. The amendment offered did not otherwise change the cause of action, but simply set forth in greater detail the averments of the original cross-petition. The court did not abuse its discretion in this respect.

The judgment of the trial court is affirmed.

OWEN, C. J., and HARRISON, PITCHFORD, JOHNSON, and McNEILL, JJ., concur. KANE and RAINEY, JJ., dissent. HIGGINS, J., having tried the case below, did not participate.